Plaintiff Michael Carmen Caudle appeals from summary judgments in favor of defendants Bill Patridge, d/b/a Off-Road Birmingham, and Eastwood Ford, Inc., in his products liability suit against them.[1] At issue is a "conversion kit" sold by Patridge, which was used to convert a 1973 Ford Courier truck from two-wheel drive to four-wheel drive; the truck was later traded and Eastwood Ford subsequently sold the truck as modified. Caudle was severely injured when the truck flipped over while he was a passenger in it.
Michael McCullars initially purchased the truck in 1982 and spoke with Patridge, the operator of a business known as Off-Road Birmingham, shortly thereafter about converting the truck's driving mechanism. Pursuant to their conversation, Patridge ordered a conversion kit from Low Manufacturing, Inc.[2] After receiving the kit, Patridge opened it, with McCullars, to make sure all of the parts were present. The service manual that came with the kit contained this admonition:
 "Please read this catalog carefully before purchasing Low Manufacturing Inc. products; you must be aware that the weight, height, center of gravity and the *Page 246 
handling of your vehicle will be effected [sic] by the installation of some of the products herein."
Patridge advised McCullars on how to install the kit and discussed with him the tools necessary for the installation.
Aside from the conversion, McCullars also replaced the truck's four-cylinder engine with a Ford 302-cubic inch V-8 engine. After he completed all of the modifications, McCullars took the truck by Off-Road Birmingham, as Patridge had asked him to do, so that someone there could "[look] up under it." McCullars drove the truck approximately 2,000 miles and then traded it to Eastwood Ford, an automobile dealership, in February 1984.
Later that month, Eastwood Ford sold the truck to James Jones "as is." Jones sold the truck to Gary Jackson on May 24, 1984. On the date of the accident, Jackson and Caudle were traveling on Interstate Highway 65 when Jackson began experiencing mechanical difficulty with the truck. After he placed the truck's transmission in neutral, the truck began skidding diagonally to the left toward the median. While in the skid, a left tire blew out and the truck flipped over twice. As a result of the crash, Caudle suffered permanent brain damage and permanent total paralysis.
In his order entering summary judgment for Patridge,[3] the trial judge stated:
 "The Court is just not convinced under the totality of the circumstances of this case that our law imposes a duty upon the Defendant in this case to warn the person who was a passenger in the complained of vehicle almost three years after the sale of the subject conversion kit which the Plaintiff contends caused his injury. Furthermore, the Court is of the opinion that the evidence supports the Defendant's contention that [he] merely acted as a conduit for the sale of the subject conversion kit by Low Manufacturing to Michael McCullars and that such a limited involvement in the transaction places no duty on the Defendant to warn the Plaintiff, Michael Caudle, almost three years later."
(Emphasis added.)
At issue is the propriety of the summary judgments in favor of Eastwood Ford and Patridge. The counts of Caudle's complaint pertinent to this appeal are: 1) negligent failure to warn — a claim under the Alabama Extended Manufacturer's Liability Doctrine; 2) negligence and wantonness in the sale of the conversion kit; and 3) breach of an express warranty and breach of an implied warranty of fitness for a particular purpose. Caudle argues that Patridge and Eastwood Ford had a duty to provide a warning somewhere in the truck regarding the truck's altered handling characteristics due to the conversion and specifically to warn that such vehicles are more prone than standard vehicles to flip because of the change in the center of gravity.
Initially, we find it irrelevant that Caudle was a passenger in the truck three years after the conversion. Caudle need not have purchased the kit to have a cause of action (due to the abolition of the privity of contract requirement), because he was obviously a person who could foreseeably be injured by virtue of his presence in the truck as a passenger.
Prior to the enunciation of the Alabama Extended Manufacturer's Liability Doctrine (hereinafter the "AEMLD") inCasrell v. Altec Industries, Inc., 335 So.2d 128 (Ala. 1976), and Atkins v. American Motors Corp., 335 So.2d 134 (Ala. 1976), recovery in products liability cases was limited to recovery against manufacturers. However, Casrell expanded the manufacturer's liability doctrine of earlier cases to include not only the manufacturer but also the supplier and seller. In qualifiedly adopting the concept of strict liability contained in § 402A of the Restatement (Second) of Torts, Atkins held that, in order to establish liability: *Page 247 
 "(1) A plaintiff must prove he suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
 "(a) the seller was engaged in the business of selling such a product, and
 "(b) it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold.
 "(2) Having established the above elements, the plaintiff has proved a prima facie case although
 "(a) the seller had exercised all possible care in the preparation and sale of his product, and
 "(b) the user or consumer had not bought the product from, or entered into any contractual relation with, the seller."
335 So.2d at 141. Thus, there was a shift in emphasis from the seller's conduct to the defective nature of the product.
A few years later, this Court fully reviewed the plaintiff's burden of proof in Sears, Roebuck Co. v. Haven Hills Farm,Inc., 395 So.2d 991 (Ala. 1981), and emphasized that it is not enough to show that the product failed to perform its intended use and that the plaintiff was injured. The plaintiff must show that the product was unreasonably dangerous when it left the defendant's control, that it was substantially unaltered when the plaintiff used it, and that it proximately caused the plaintiff's injuries. In order to prove the product's defective nature and its nexus with the plaintiff's injuries, "ordinarily, expert testimony is required because of the complex and technical nature of the commodity." 395 So.2d at 995.
Caudle submitted two affidavits from Billy S. Peterson (a mechanical/consulting engineer in the field of failure analysis and accident reconstruction) in opposition to the defendants' motions for summary judgment. Peterson stated that the truck's center of gravity was substantially altered by the installation of the four-wheel drive conversion kit and the 302-cubic inch V-8 engine, which he claims adversely affected its handling characteristics and contributed to the rollover.
We find that Caudle has satisfied his burden of offering evidence that would establish liability on the part of Patridge. Caudle provided at least a scintilla of evidence, through Peterson's affidavits, that the conversion kit was unreasonably dangerous when Patridge sold it to McCullars and, further, that Caudle was injured as a result of the installation of the kit on the truck. Patridge was in the business of selling the kit, and there is no evidence that the kit had been substantially changed when McCullars used it.
Patridge argues that, as the trial court held, he did not have a duty to warn Caudle of the dangers the kit posed as installed on the truck. To the contrary, Cazalas v.Johns-Manville Sales Corp., 435 So.2d 55, 58 (Ala. 1983), makes it clear that he did have a duty to warn in this case:
 "Under Alabama law, if a manufacturer or seller places goods on the market which are imminently dangerous when put to their intended purpose and the defendant knows or should know that the goods are dangerous when used in their customary manner, the defendant must exercise reasonable diligence to make such dangers known to the public likely to be injured by the product."
(Emphasis added; citations omitted.)
Patridge also argues that Caudle has failed to show what kind of warning should have been given. We consider the finding inOutlaw v. Firestone Tire Rubber Co., 770 F.2d 1012, 1015
(11th Cir. 1985), a case involving the AEMLD, instructive on this contention:
 "While a jury would be entitled to consider the content of a warning in deciding whether there was a duty to warn, we are aware of no Alabama case that places the burden on the plaintiff to produce this type of evidence in order to make out a prima facie case."
Contrary to our holding regarding Patridge, we hold that Eastwood Ford did *Page 248 
not owe Caudle a duty to warn of the dangers caused by the modification, because Eastwood Ford was not in the business of selling the conversion kits, as was Patridge. Caudle has not established a prima facie case of liability as to Eastwood Ford under the AEMLD, Atkins, supra; thus, the summary judgment for it was correct.
The three affirmative defenses available to a seller of a defective product are: 1) no causal relation; 2) assumption of the risk; and 3) contributory negligence (misuse of the product). Casrell, supra, and Atkins, supra.
To avail itself of the no-causal relation defense, Patridge must show that he was in the business of distributing or processing for distribution finished products; that he received the product already in a defective condition; that he did not contribute to this defective condition; and that he had neither knowledge of the defective condition nor an opportunity to inspect the product that was superior to the knowledge or to the opportunity of the consumer. Atkins, supra, at 143. See, also, Consolidated Pipe Supply Co. v. Stockham Valves Fittings, Inc., 365 So.2d 968 (Ala. 1978). Although Patridge did not contribute to the defective condition of the conversion kit, he had, at the very least, a superior knowledge of the nature of converted trucks.
With regard to the assumption of the risk defense, whether Caudle knew of and subjectively appreciated the altered handling characteristics of the truck due to the conversion is a jury question. Beloit Corp. v. Harrell, 339 So.2d 992 (Ala. 1976).
Finally, we find no evidence that Caudle was contributorily negligent (i.e., that he misused the kit), because he did not install the kit on the truck.
For the foregoing reasons, we find that Caudle presented a prima facie case of liability on the part of Patridge under the AEMLD. Thus, the summary judgment in his favor is reversed. The summary judgment for Eastwood Ford is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and JONES, ADAMS, HOUSTON and KENNEDY, JJ., concur.
[1] Because the complaint was filed on March 28, 1985, this case is governed by the "scintilla evidence rule." See Ala. Code 1975, § 12-21-12.
[2] Low Manufacturing was named as a defendant in this action but was voluntarily dismissed without prejudice and is not a party to this appeal.
[3] The trial judge entered a summary judgment for Eastwood Ford on the case action summary sheet approximately two months later.