Billy J. **WAKELAND, et al., Plaintiffs,**

v.

**BROWN & WILLIAMSON TOBACCO CORPORATION, et al.,**
**Defendants.**

**No. Civ.A. 97–1091–BH–M.**

United States District Court,
S.D. Alabama,
Southern Division.

March 5, 1998.

Christopher E. Peters, J. Keith Givens, Angela J. Mason, Cherry, Givens, Peters & Lockett, P.C., Mobile, AL, Frederick T. Kuykendall, III, R. Jackson Drake, Charlene Cullen, Cooper, Mitch, Crawford, Kuykendall & Whatley, L.L.C., Birmingham, AL, for Plaintiffs.

Edward S. Sledge, III, Archibald T. Reeves, IV, Frederick G. Helmsing, III, McDowell, Knight, Roedder & Sledge, L.L.C., Mobile, AL, Scott E. Delacroix, James G. Perdigao, Adams & Reese, L.L.P., New Orleans, LA, Gary R. Long, James P. Muehlberger, Jennifer L. Brown, Shook, Hardy & Bacon L.L.P., Kansas City, MO, H. Thomas Wells, Jr., William B. Waltheim, Jr., Maynard, Cooper & Gale, P.C., Birmingham, AL, Mack B. Binion, Kimberly C. Hodgson, Briskman & Binion, Mobile, AL, Frederick G. Helmsing, Jr., Joseph P.H. Babington, John T. Dukes, Helmsing, Lyons, Sims & Leach, P.C., Mobile, AL, Gordon A. Smith, W. Randall Bassett, King & Spalding, Atlanta, GA, Samuel H. Franklin, Stephen J. Rowe, Lightfoot, Franklin, White & Lucas, L.L.C., Birmingham, AL, Steve Geise, Rick Stuhan, Paul Koethe, Jones, Day, Reavis & Pogue, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

HAND, Senior District Judge.

Before the court is plaintiffs' motion for remand to the Circuit Court for Mobile County, Alabama (Doc. 7). Upon due consideration of all pertinent portions of the record,

the court concludes that the motion to remand should be denied.

## I. BACKGROUND

Billy J. Wakeland and Linda K. Wakeland, husband and wife, filed their complaint in this civil action in the Circuit Court for Mobile County, Alabama, on October 22, 1997. Named as defendants are many of the major tobacco concerns: Brown & Williamson Tobacco Corporation, The American Tobacco Company, Lorillard Tobacco Company, R.J. Reynolds Tobacco Company, RJR Nabisco Inc., and Philip Morris Companies, Incorporated. In addition, the complaint names several entities who allegedly participated in the distribution and retail sale of cigarettes to Billy J. Wakeland. These defendants are The Lewis Bear Company, K & B Drug Stores, Inc., Delchamps, Inc., Harco, Inc. and Tobacco Shack of Alabama, Inc. # 5.[1] Of the Distributor defendants, at least Delchamps, Harco, and Tobacco Shack have Alabama domicile, and are therefore nondiverse defendants for diversity purposes.[2]

Plaintiffs' complaint alleges that Billy J. Wakeland started smoking in about 1947, when he was a mere 7 years old, and that he unknowingly became addicted to the nicotine in the cigarette smoke. Compl. ¶¶ 10, 11, 12. The complaint further alleges that Wakeland was diagnosed with "chronic obstructive pulmonary disease and emphysema" on or about April 1, 1997. Compl. ¶ 13. In three counts, the complaint seeks relief under Alabama law for injury Wakeland[3] has suffered as a result of cigarette smoking.

The first count is a claim for negligence and wantonness. Plaintiffs allege that the defendants were under a duty to warn foreseeable plaintiffs of the dangers of cigarette smoking, and were under a further duty to design, manufacture, and sell cigarettes that were less dangerous than those smoked by Wakeland. The defendants, breaches of these duties are alleged to be proximate causes of Wakeland's current physical condition. Compl. ¶¶ 28–32.

Count II of the complaint states the products liability cause of action commonly known as the "Alabama Extended Manufacturer's Liability Doctrine" or AEMLD. The AEMLD action is premised upon both failure to warn (¶ 41) and defective design (¶ 42) Compl. ¶¶ 33–42.

Finally, Count III of the complaint accuses the defendants of fraud, misrepresentation, and suppression. Compl. ¶¶ 43–47.

Defendants removed on November 24, 1997, invoking this court's congressionally-authorized diversity jurisdiction under United States Code, Title 28, section 1332(a). Plaintiffs moved for remand on December 8, 1997. The parties' briefing has amply informed the court of their respective positions regarding the propriety of the removal and the issues joined are now ripe for this court's consideration.

Upon full consideration of the premises, the court concludes that the jurisdictional requisites of complete diversity and $75,000 in controversy are present in this case. Subject matter jurisdiction is therefore vested in this court by 28 U.S.C. § 1332 and the motion to remand will be denied.

## II. DIVERSITY OF CITIZENSHIP

■ The plaintiffs are residents of Alabama. While none of the Manufacturer defendants have domicile in Alabama for diversity purposes, at least three of the Distributor defendants have Alabama domicile. Therefore, complete diversity does not exist on the face of the complaint. This much is incontestable. *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed.

---

1. These defendants will be referred to collectively as the "Distributor defendants."

2. While the complaint is not specific as to the domicile of Delchamps, Harco, K & B, and Tobacco Shack, it alleges that Lewis Bear is an Alabama Corporation. The Notice of Removal avers that Lewis Bear and K & B are both foreign corporations with principal places of business outside Alabama, and admits that Del-

champs, Harco, and Tobacco Shack are either Alabama corporations or foreign corporations with principal places of businesses within Alabama.

3. References to "Wakeland" will indicate plaintiff Billy J. Wakeland. Linda K. Wakeland asserts a loss-of-consortium claim.

435 (1806). Although the rule of complete diversity is of rather rare vintage in our system of laws, it was also recognized some years ago that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921). The two "classic" forms of fraudulent joinder exist when "there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court or [when] there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983); also see *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989). As a corollary to the first form of fraudulent joinder, the Eleventh Circuit has said that a removed case must be remanded if there is any "reasonable basis for predicting that the state law might impose liability on the facts involved." *Crowe v. Coleman,* 113 F.3d 1536, 1542 (11th Cir.1997) citing *B, Inc. v. Miller Brewing Co.,* 663 F.2d 545 at 550 (5th Cir. Unit A 1981).

More recently, the Court of Appeals has recognized that an "egregious misjoinder" will also support a finding of fraudulent joinder. *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996).[4]

The court concludes that the Distributor defendants are fraudulently joined to this action because there is "no possibility" that the plaintiff could establish any cause of action against them. Of course, if the plaintiffs could establish any claim against the Distributor defendants, then they would not be fraudulently joined. It is therefore necessary to analyze in some detail each of the claims raised in the complaint.

**4.** This court has adopted the shorthand "fraudulent misjoinder" to describe this variety of fraudulent joinder. See *Rudder v. Kmart,* No. 97–0272–BH–S (S.D.Ala. Oct. 15, 1997) at 11; *Koch v. PLM International, Inc.* No. 97–0177–BH–C (S.D.Ala. Sept. 24, 1997) at 4.

**5.** The other arguments raised (statutory preemption, lack of legal duty under Alabama law, and

## A. COUNT I: NEGLIGENCE AND WANTONNESS

Defendants contend that the plaintiffs can establish no negligence cause of action against the Distributor defendants. In favor of this proposition they propound to the court several arguments.[5] The court concludes that, under Alabama law, a negligence action is merged into a claim under the AEMLD; therefore no separate action for negligence will lie when a plaintiff claims he is injured by a defective and unreasonably dangerous product.

In *Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala.1976) and its companion case, *Casrell v. Altec Industries, Inc.,* 335 So.2d 128 (Ala.1976), the Alabama Supreme Court first recognized the AEMLD, which substantially follows the well-received approach of the Restatement (Second) of Torts § 402A (1965) and the official commentary thereto.[6] However, unlike many of her sister states, Alabama has kept her products-liability doctrine firmly rooted in the substantive soil of the tort of negligence. In *Atkins,* the court stated that it "reject[ed] the adoption of the pure strict tort liability" commonly accepted by other states. *Atkins, supra,* at 137. Specifically, the court took

> exception to two fundamental aspects of the Restatement's concept of strict liability: (1) the no-fault precept which imposes liability equally on all "sellers" without regard to culpability causally related in fact to the defective condition of the product, and (2) the practical abolition of the distinction between the remedies of tort and contract.[7]

*Id.* at 138.

Under the AEMLD, in contrast to a pure negligence approach,

statute of limitations) need not be considered in the context of Count I.

**6.** See n. 8, infra.

**7.** In this connection, it is to be noted that the contract-based action on the breach of the implied warranty of merchantability, Ala.Code § 7–2–314, remains a viable—and analytically dis-

The gravamen of the action is *not that: the defendant failed to exercise due care* in the manufacture, design, sale or placing in the commercial stream a defective product; rather,

\* \* \* \* \* \*

[t]he *fault of the manufacturer is that he has conducted himself unreasonably* in placing a product on the market which will cause harm when used according to its intended purpose.

*Id.* at 139–40 (emphasis supplied).

■ In culmination, the Atkins court agreed that "the public policy of Alabama is that *negligence is the basis of liability in products liability litigation.... We simply hold that selling a dangerously unsafe product is negligence as a matter of law.*" *Id.* at 141 (emphasis supplied).

■ In other words, a duty of due care toward any foreseeable person exposed to the product is breached, as a matter of law, when the defendant places a product in the stream of commerce which is defective and in an unreasonably dangerous condition, regardless of the degree of care the defendant used *in fact* in the design and manufacture of the product.

It is a necessary consequence of the foregoing analysis that "the strict liability and negligence claims merge." *Casrell, supra,* at 134. Accordingly, the Alabama Supreme Court held in *Veal v. Teleflex, Inc.* 586 So.2d 188 (Ala.1991), that the trial court did not err when it "instructed the jury only with regard to the AEMLD and refused to instruct the jury as to negligence and wantonness." *Id.* at 190.

The state of affairs presented in *Veal v. Teleflex* is theoretically indistinguishable from the case at bar. "The substance of the complaint . . . is that [the defendants] placed into the stream of commerce a product that was unreasonably dangerous for its intended use. *This is a claim under the AEMLD.... " Id.* at 191 (emphasis supplied) Also see, *Pitts v. Dow Chemical,* 859 F.Supp. 543, 550–51 (M.D.Ala.1994)¨ (AEMLD is sole cause of action for negligence when factual basis for the charge is that defendant sent a defective product into the stream of commerce).

Based on the foregoing, the court has no difficulty in holding that Count I of the complaint fails to state a claim distinct from the AEMLD claim stated in Count II. The court now turns to the question of whether an AEMLD claim will lie against wholesalers and retailers of cigarettes in Alabama.

## B. COUNT II: ALABAMA EXTENDED MANUFACTURERS LIABILITY DOCTRINE

■ Count II of the complaint seeks to hold all of the defendants liable under the AEMLD.[8] Plaintiffs allege that the cigarettes smoked by Billy Wakeland are "defective" and "unreasonably dangerous" based on theories of failure to warn and defective design.

Defendants argue that Wakeland's AEMLD claim is preempted by federal law[9] and is barred by the statute of limitations. Regardless of whether and to what degree these arguments may be correct, the court concludes that the defendants involved only in distributing and selling cigarettes are entitled to the defense of lack of causal relation as a matter of law. There is, therefore, no possibility that plaintiffs can establish a cause of action under the AEMLD against the Distributor defendants.

---

tinct—theory of relief under Alabama law. *Huprich v. Bitto,* 667 So.2d 685 (Ala.1995).

**8.** "To establish liability [under AEMLD] (1) a Plaintiff must prove he suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller was engaged in the business of selling such a product, and (b) it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold. (2) Having established the above elements, the plaintiff has proved a prima facie case although (a) the seller had exercised all possible care in the preparation and sale of his product, and (b) the user or consumer had not bought the product from, or entered into any contractual relation with, the seller." *Atkins, supra,* at 141.

**9.** See n. 13, infra.

This analysis begins, as did that of Count I, with a proper understanding of the very theoretical underpinnings of Alabama's products-liability doctrine. The AEMLD undeniably "retain[s] the 'fault' concept based on a standard of conduct causally related in fact to the defective condition" of the goods in question. *Atkins, supra,* at 137. Indeed, Alabama law expressly rejects "the no-fault precept which imposes liability equally on all 'sellers' without regard to culpability causally related in fact to the defective condition of the product...." *Id.* at 138. To do otherwise would place

> the test of culpability in the quality of the product rather than in a standard of conduct resulting in the quality of the product; and it [would also] fail[ ] to distinguish between one whose conduct has contributed to its defective condition and one whose conduct has not so contributed.

*Id.* at 139.

In accordance with the concept of fault retained in Alabama products-liability jurisprudence, it is an affirmative defense to liability under AEMLD that *"there is no causal relation in fact* between [a defendant's] activities in connection with handling the product and its defective condition." *Id.* at 143 (emphasis supplied).

> For example, the defendant may show that he is in the business or either distributing or processing for distribution finished products; he received a product already in a defective condition; he did not contribute to this defective condition; he had neither knowledge of the defective condition, nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer.

*Id.*

It would be a mistake to read the above elements as comprising an inflexible test for determining whether the defense is available. A prima facie case of this defense is made out by showing a lack of causal relation in-fact. The above elements, while useful, are given as an "example," id., and merely "one way," *Allen v. Delchamps, Inc.,*

624 So.2d 1065, 1069 (Ala.1993) in which the defense may be established. Nevertheless, the court finds that each of the elements appropriately describe the activities of the Distributor defendants with respect to cigarettes.

The plaintiffs do not contend that the Distributor defendants are not in the business of distributing finished products, that they did not receive the cigarettes in a defective condition, or that they contributed to the defective condition. They do argue, however, that the distributors had knowledge of the defective condition superior to that of the consumer, and/or an opportunity to inspect the product superior to that of the consumer.

The court finds the allegation of superior knowledge specious. The dangers of cigarette smoking have been a matter of public knowledge since at the latest January 1, 1966, when the first government-mandated warning labels appeared on cigarette packages. Federal Cigarette Labeling and Advertising Act of 1965, Pub.L. 89–92, 79 Stat. 282, as amended, 15 U.S.C. §§ 1331–1340. Moreover, the plaintiff, who actually smoked the cigarettes, was certainly at no disadvantage to know their harmful effects as compared to someone who merely sold them, even if the full extent of the harm was not readily apparent. Manifestly, it is not the purpose of the "superior knowledge" prong that the defense be denied to one who sells a product, the dangerous properties of which are well known.[10] Superior knowledge, in order to defeat the defense, must be something akin to the fault attributed to the manufacturer for placing in the stream of commerce an unreasonably dangerous product. *Atkins, supra,* at 140 ("The manufacturer, or retailer, is held liable because he has created an unreasonable risk of harm."). As a matter of law, therefore, the court holds that the Distributor defendants did not have superior knowledge regarding the allegedly defective nature of cigarettes.

Similarly, plaintiffs' allegation of superior opportunity to inspect the goods in

---

**10.** Of course, whether such a product is defective or unreasonably dangerous under Alabama law is a question to be resolved at a later date. See,

e.g., Restatement (Second) of Torts § 402A cmt. K (1965) (set forth as appendix to *Atkins, supra,* 335 So.2d at 148).

question is unavailing. As the Alabama Supreme Court has stated on numerous occasions,

> The "superior opportunity" must be a meaningful one. If the defect was latent and could not have been discovered by either consumer or distributor by a reasonable inspection, neither had a superior opportunity [to inspect].

*Fleming Farms v. Dixie Ag Supply, Inc.*, 631 So.2d 922, 928 (Ala.1994) citing *Consolidated Pipe & Supply Co. v. Stockham Valves & Fittings, Inc.*, 365 So.2d 968, 971 (Ala. 1978). Plaintiffs do not argue any specific, reasonable means of inspection by which the Distributor defendants should have—or even *could* have—discovered the allegedly defective nature of cigarettes. Again, common reason dictates that plaintiff himself, a smoker of more than 50 years, was in the most advantageous position to discover the harmful effects of cigarettes. As a matter of law, therefore, the court holds that the Distributor defendants did not have a superior opportunity to inspect and thereby discover the allegedly defective nature of cigarettes.

But at the end of it all, it must be borne in mind that the lodestar of the defense of lack of causal relation is just that—a lack of causal relation-in-fact between the seller's handling of the goods and the defective character of the goods. Defendants' access to the defense must give expression to the concept of fault as it remains a viable component of Alabama products-liability doctrine. The defense, "[v]ital to the fault concept," *Atkins, supra,* at 139, is intended to preclude liability where there is no fault. Causal relation and fault are plainly absent here.

█ As a matter of law, therefore, the defense of lack of causal relation is available to one who merely sells cigarettes within Alabama, whether on the wholesale level or the retail level.[11]

The cases of *Allen v. Delchamps, Inc.*, 624 So.2d 1065 (Ala.1993) and *Caudle v. Patridge*, 566 So.2d 244 (Ala.1990) lend no support to plaintiffs' argument that the Distributor defendants are not entitled to the defense of lack of causal relation. On the contrary, they provide a useful study in contrast to the case at bar, in that both cases involve a certain degree of retailer activity with some nexus to the defective nature of the goods. This record is devoid of any suggestion of any such activity.

In the case of *Caudle v. Patridge*, the Alabama Supreme Court reversed a summary judgment which had been entered by the Circuit Court in favor of a seller of a four-wheel-drive conversion kit. There, the seller of the kit "advised [the buyer] on how to install the kit and discussed with him the tools necessary for the installation." *Caudle, supra,* at 246. Moreover, the seller asked the buyer to bring the truck back to the store when the conversion was complete "so that someone there could look up under it." *Id.* (internal quotation marks omitted).

Two important legal ramifications may be ascribed to the actions of the seller of the four-wheel—drive conversion kit at issue in the Caudle case: (1) he held himself out as one with superior knowledge of the conversion, and (2) he assumed a duty to inspect the final installation. There is no such holding of oneself out or assumption of duty involved in the ordinary course of wholesale or retail distribution of cigarettes. Plaintiffs do not argue that additional discovery would uncover any such activities.[12]

The case of *Allen v. Delchamps* involved the sale of celery treated with sodium bisulfite, a compound to which a small percentage of people are allergic. The trial court entered a summary judgment for Delchamps on all claims. The Alabama Supreme Court reversed, holding that jury issues existed as

---

**11.** This conclusion is further bolstered by *Cantley v. Lorillard Tobacco Co., Inc., et al.*, No. CV–93–HM–902–J (N.D.Ala., Jasper Div. May 23, 1993) (order granting motion to remand); *Cantley v. Lorillard Tobacco Co., Inc., et al.*, No. CV–93–194 (Cir.Ct. Walker Co. Nov. 5, 1995) (order granting summary judgment to Retha Greathouse); *Seaborn v. R.J. Reynolds Tobacco Co.*, No. 96–T–1540–N (M.D.Ala. Dec. 30, 1996) (order granting

motion to remand); *Seaborn v. R.J. Reynolds Tobacco Co.*, No. CV–96–0215 (Cir.Ct. Barbour Co. Aug. 18, 1997) (order dismissing wholesale defendant without prejudice).

**12.** In fact, no discovery would be necessary to discover any such conduct, because it would have been directed at Billy Wakeland himself.

to the defense of lack of causal relation and as to the merchantability of the celery. As to the lack of causal relation, the court noted that "Delchamps routinely inspects produce for freshness and quality at its warehouse. Delchamps also requires its suppliers to certify that they are complying with pesticide and insecticide regulations." Allen, *supra*, at 1066. In fact, Delchamps had inspected samples of the very shipment of celery from which the plaintiff had made her purchase. *Id.*

Here again, it was the assumption of a duty to inspect, and actual inspection, that the court found created a jury issue as to the defense. In addition, the retailer had set specific standards for its suppliers to follow. No such inspections or quality standards are heard of in the businesses of wholesale and retail distribution of cigarettes.

Because retailers and wholesalers of tobacco in the ordinary course of business neither assume a duty to test or inspect cigarettes for safety, nor require their suppliers to adhere to their own design or content standards, the Caudle and Allen cases are not contrary to the holding of this court.

As a threshold legal matter, Counts I and II of the complaint will not lie against the Distributor defendants.

### C. COUNT III: FRAUD, MISREPRESENTATION, AND SUPPRESSION

Finally, plaintiffs attempt to state a claim of fraud against the defendants. Count III of the complaint fails to state a claim upon which there is any possibility of success against any of the Distributor defendants.

#### 1. Misrepresentation

Count III of the complaint avers generally that the defendants materially misrepresented the risks of tobacco smoking to Wakeland, that in reliance on those misrepresentations he was induced to buy and use cigarettes, and that as a consequence of that use he and his wife were injured.

■ However, the complaint simply does not specify what affirmative misrepresentation *any defendant*—let alone any *distributor defendant*—is alleged to have made. Cf. Fed.R.Civ.P. 9(b); Ala.R.Civ.P. 9(b). Any such misrepresentations would have been made directly to Wakeland. The knowledge of the misrepresentations would necessarily be in his possession; therefore, he can not be heard to complain that he needs additional discovery in order to substantiate the claim. "If plaintiffs were unable at the time they formulated their complaint to set forth any specific factual allegations against the distributor defendants upon which could be based any claim of fraud or breach of warranty, there can be no better admission of fraudulent joinder of these defendants." *Lyons v. American Tobacco Co., Inc.,* 1997 WL 809677, No. CV–96–0881–BH–S, Mem. Op. at 11 (S.D .Ala. Oct. 1, 1997).

Moreover, any allegation that any seller of cigarettes actually made an affirmative misrepresentation understating the risks of tobacco smoking within the applicable limitations period simply defies common sense.

The claim of misrepresentation is clearly without merit as to the distributor defendants. It cannot, therefore, defeat a claim of fraudulent joinder.

#### 2. Suppression

■ In contrast, the complaint does allege particular facts which the defendants are alleged to have suppressed from the plaintiff. See, e .g., Compl. ¶¶ 20, 22, 30, 41. Clearly, however, any suppression claim of the nature found in the complaint is barred by the two-year statute of limitations imposed by Alabama law. Ala.Code § 6–2–38(a) (1975); *Casassa v. Liberty Life Ins. Co.,* 949 F.Supp. 825, 828 (M.D.Ala.1996).[13]

Plaintiffs can not avail themselves of the "saving provision" of Ala.Code § 6–2–3, when

---

**13.** It may be true, as defendants argue, that this claim is also preempted by federal law. See *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *Cantley v. Lorillard Tobacco Co.,* 681 So.2d 1057 (Ala.

1996). However, given the difficulty the courts have encountered in applying Cipollone, this court is disinclined to immerse itself in the morass of preemption.

conspicuous warnings regarding the dangers of cigarette smoking have appeared on cigarette packages since January 1, 1966, the effective date of the Federal Cigarette Labeling and Advertising Act of 1965. Since 1984, even more specific warnings have appeared as required by the Comprehensive Smoking Education Act.[14] "[T]he facts constituting the fraud are to be considered as discovered when they ought to be discovered, when such facts come to knowledge as provoke inquiry in a person of ordinary prudence, and which, if followed up, would lead to the discovery of the fraud." *Industrial Finance and Thrift, Inc. v. Shenandoah Life Ins. Co.*, 291 Ala. 389, 396, 281 So.2d 636, 642 (Ala.1973).

Because any claim of suppression against the Distributor defendants would be barred by the applicable statute of limitations, there is no possibility that plaintiffs could prevail on the claim. It can not, therefore, defeat a claim of fraudulent joinder.

### III.  AMOUNT IN CONTROVERSY

The complaint seeks compensatory and punitive damages in an unspecified amount. Upon examination of the allegations made in the complaint, the court finds that the complaint places more than $75,000 in controversy. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996) ("preponderance of the evidence" standard is appropriate when complaint seeks unspecified damages).

### IV.  CONCLUSION AND ORDER

For the reasons set forth in the foregoing Memorandum Opinion, the court concludes that the Distributor defendants are fraudulently joined to this action and therefore complete diversity is present in this case. The court further finds that the amount in controversy exceeds the sum of $75,000, exclusive of costs and attorney's fees.

This court therefore possesses subject matter jurisdiction over this civil action pursuant to U.S. Const. Art. III, § 2 and United States Code, Title 28, section 1332(a).

Accordingly, it is **CONSIDERED** and **ORDERED:**

1.  That plaintiff's motion to remand (Doc. 7) is **DENIED;**

2.  That the following defendants and/or their successors, by merger or otherwise, are due to be and are hereby **DISMISSED** from this action: The Lewis Bear Company; Delchamps, Inc.; Harco, Inc.; K & B Drug Stores, Inc.; and Tobacco Shack of Alabama, Inc., # 5;

3.  That defendants, motion for leave to file a sur-reply (Doc. 35) is **MOOT.**

---

14.  Pub.L. 98–474, 98 Stat. 2201. The law has, for more than a decade preceding the filing of this complaint, required a rotation of four warnings: "Smoking Causes Lung Cancer, Heart Disease, And Emphysema;" "Quitting Smoking Now Greatly Reduces Serious Health Risks;" "Pregnant Women Who Smoke Risk Fetal Injury And Premature Birth;" and "Cigarette Smoke Contains Carbon Monoxide." 15 U.S.C. § 1333(a)(1) (1994).