Betty R. SMITH and John
L. Smith, Plaintiffs,

v.

BROWN & WILLIAMSON TOBACCO
CORP., et al., Defendants.

No. CIV.A. 97–2711 SSH.

United States District Court,
District of Columbia.

July 19, 2000.

Wayne R. Cohen, Thomas Joseph Simeone, Cohen & Cohen, Washington, DC, for Plaintiffs.

Benjamin Sorrells Boyd, Raymond G. Mullady, Jr., Piper, Marbury, Rudnick & Wolfe, Peter J. Biersteker, Paul R. Reichert, Jones, Day, Reavis & Pogue, James K. Archibald, David M. Malone, Venable, Baetjer, Howard & Civiletti, Washington, DC, for Defendants.

## *OPINION*

STANLEY S. HARRIS, District Judge.

Before the Court are defendants' motion for summary judgment, plaintiffs' opposition, defendants' reply thereto, and various supplemental memoranda submitted by defendants. Upon consideration of the parties' submissions and the entire record in this case, the Court grants defendants' motion. Although findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56, *see* Fed.R.Civ.P. 52(a); *Summers v. Department of Justice,* 140 F.3d 1077, 1079–80 (D.C.Cir.1998), the Court nonetheless sets forth its reasoning.

## BACKGROUND

The motivation for this case arises out of injuries suffered by plaintiff Betty Smith,

allegedly caused by her smoking cigarettes that were manufactured by defendants Brown & Williamson Tobacco Corp., R.J. Reynolds Tobacco Co., and Philip Morris, Inc. *See* Compl. ¶ 8. Mrs. Smith alleges that she became addicted to cigarettes shortly after she began smoking in 1945 and that, as a result, she was unable to quit smoking until 1991. *See id.* ¶¶ 8–9. In the late 1980s, Mrs. Smith was diagnosed with emphysema, and in 1992 she was diagnosed with throat cancer. *See id.* ¶ 10. She and her husband, plaintiff John Smith, filed a six-count complaint in the Superior Court of the District of Columbia on October 10, 1997, alleging product liability, fraud, deceptive trade practices, and loss of consortium claims.[1] *See id.* ¶¶ 15–54. After removing the case to this Court, defendants filed a motion to dismiss. On May 19, 1998, the Court granted defendants' motion to dismiss with respect to Counts I–III of plaintiffs' complaint on the ground that these claims were barred by the applicable statute of limitations, but denied defendants' motion with respect to Counts IV–VI. *Smith v. Brown & Williamson Tobacco Corp.*, 3 F.Supp.2d 1473 (D.D.C.1998). Count IV alleges that defendants committed fraud by withholding information that cigarettes were addictive, and cause cancer and emphysema, *see* Compl. ¶¶ 36–42; Count V alleges that defendants' withholding of information constitutes a deceptive trade practice in violation of D.C.Code § 28–3904, *see id.* ¶¶ 43–51; and Count VI alleges a derivative claim for loss of consortium by Mr. Smith as a result of the injuries suffered by Mrs. Smith, *see id.* ¶¶ 52–54. Defendants now move for summary judgment on Counts IV–VI.

## STANDARD OF REVIEW

Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in the light most favorable to the nonmoving party. *SeeMatsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Mere allegations in the pleadings, however, are not sufficient to defeat a summary judgment motion; if the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See* Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

Defendants assert three alternative grounds in support of their motion for summary judgment. First, defendants argue that Mrs. Smith's fraud and deceptive trade practices claims are barred by the three-year statute of limitations applicable in the District of Columbia ("D.C.").[2] Second, defendants contend that these claims are deficient as a matter of law because Mrs. Smith cannot establish that she reasonably relied on defendants to disclose

---

1. One of the product liability counts—Count III—also stated a claim against Young Yoon d/b/a Young's Market; the complaint alleged that Mrs. Smith purchased cigarettes from Young Yoon from the early 1980s until 1991. Compl. ¶ 13. Young Yoon, however, was dismissed as a defendant from this case when the Court dismissed Count III pursuant to defendants' motion. *See Smith v. Brown & Williamson Tobacco Corp.*, 3 F.Supp.2d 1473, 1475–76 & n. 4 (D.D.C.1998).

2. Mr. Smith's loss of consortium claim is derivative of Mrs. Smith's fraud and deceptive trade practices claims. Thus, to the extent that defendants are entitled to summary judgment on Mrs. Smith's fraud and deceptive trade practices claims, they are entitled to summary judgment on Mr. Smith's loss of consortium claim. *See Smith*, 3 F.Supp.2d at 1477 n. 5 (citing *Meek v. Shepard*, 484 A.2d 579, 582 n. 6 (D.C.1984)).

evidence of the addictiveness and health hazards of cigarettes, or that defendants had a duty to disclose such information. Last, defendants contend that Mrs. Smith's claims are preempted by federal law. Although the Court disagrees with defendants' threshold argument that plaintiffs' claims are barred by the statute of limitations, it concludes that defendants are entitled to summary judgment because Mrs. Smith has not shown that she relied on defendants to disclose information about cigarettes, or that defendants' alleged conduct caused her injuries.

## A. Statute of Limitations

 Mrs. Smith's fraud and deceptive trade practices claims are governed by a three-year statute of limitations. See D.C.Code § 12–301(8). What constitutes the accrual of a cause of action is a question of law; when the cause of action actually accrued in a particular case is a question of fact. See Cevenini v. Archbishop of Washington, 707 A.2d 768, 770–71 (D.C. 1998); Diamond v. Davis, 680 A.2d 364, 370 (D.C.1996). For purposes of the statute of limitations, a cause of action accrues when the plaintiff has either actual or inquiry notice of her cause of action. See Diamond, 680 A.2d at 372. " '[A]ctual notice' is that notice which a plaintiff actually possesses; 'inquiry notice' is that notice which a plaintiff would have possessed after due investigation." Id. A plaintiff is charged with inquiry notice of a claim when she knew of (1) an injury, (2) its cause in fact, and (3) some evidence of wrongdoing by defendants. See Cevenini, 707 A.2d at 771; Diamond, 680 A.2d at 379. It is undisputed that by 1992 Mrs. Smith knew of her injury—throat cancer— and its cause in fact—cigarette smoking. See Defs.' Mot. at 5; Pls.' Opp'n at 4–7; see also Smith, 3 F.Supp.2d at 1475. The

parties disagree only as to the third requirement of inquiry notice—when Mrs. Smith had sufficient evidence of some wrongdoing on the part of defendants to start the running of the statute of limitations on a fraud claim.[3] Defendants argue that the appropriate date is 1992 because, by that time, (1) she knew or should have known of the addictive and hazardous qualities of cigarettes, given the warnings on cigarette packages and the publicly available information about cigarettes, (2) she was aware of her own addiction to smoking, and (3) she was aware of defendants' nondisclosure of information on the addictive and harmful qualities of smoking cigarettes. Plaintiffs, by contrast, argue that Mrs. Smith did not have sufficient evidence of wrongdoing until 1997, when internal tobacco company documents were released evidencing defendants' alleged efforts to mislead the public about the harmful effects of smoking cigarettes.

 Defendants are not entitled to summary judgment on the ground of statute of limitations because Mrs. Smith's awareness of defendants' nondisclosure of information, coupled with her purported knowledge of her own addiction and of the generally addictive and harmful qualities of cigarettes, was not sufficient evidence of wrongdoing to satisfy the third requirement for inquiry notice of her fraud claim. The nature of a cause of action determines the quantum of knowledge necessary to start the running of the statute of limitations. See Hobson v. Wilson, 737 F.2d 1, 35 (D.C.Cir.1984); Richards v. Mileski, 662 F.2d 65, 68–69 (D.C.Cir.1981). In order to prevail on a claim of fraud in D.C., a plaintiff must establish (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken by plaintiffs in reliance upon the

---

**3.** As the Court stated previously, a claim for deceptive trade practices under the D.C.Code which relies "on affirmative statements or intentional omissions of material facts 'is analogous to [a] fraud by nondisclosure claim,' except that intent is not an element."

Smith, 3 F.Supp.2d at 1477 n. 5 (quoting Witherspoon v. Philip Morris Inc., 964 F.Supp. 455, 464 (D.D.C.1997)). Thus, the Court's statute of limitations analysis with respect to Mrs. Smith's fraud claim controls that with respect to her trade practices claim.

representation. *Higgs v. Higgs,* 472 A.2d 875, 876 (D.C.1984); *Bennett v. Kiggins,* 377 A.2d 57, 59 (D.C.1977). The first element may be satisfied by nondisclosure or silence. *Bennett,* 377 A.2d at 59. Mrs. Smith's fraud claim alleges that defendants have known since the 1950s that cigarettes are addictive, and cause cancer and emphysema, and that they withheld and concealed this knowledge with the intent to deceive the public.[4] *See* Compl. ¶¶ 36–42. The Court does not find that Mrs. Smith's purported awareness of her addiction to cigarettes, the health hazards of smoking cigarettes, and defendants' silence with respect to those hazards was sufficient evidence of wrongdoing to charge her with inquiry notice of a fraud claim because it provided Mrs. Smith with no indication that defendants were deliberately concealing information in order to deceive the public.[5] This evidence was likely sufficient to charge her with inquiry notice of a negligence claim, as it suggested that defendants should have investigated, and alerted the public to, the hazards of smoking cigarettes. *See, e.g., East Penn. Mfg. Co. v. Pineda,* 578 A.2d 1113, 1118 (D.C. 1990) (negligent failure to warn claim requires that supplier have "reason to know that [a] product is dangerous and fail[ ] to exercise reasonable care to so inform the user"). It was not, however, sufficient to charge her with inquiry notice of a fraud claim because it only gave rise to an inference that defendants had known about the harmful qualities of cigarettes, and revealed nothing as to defendants' alleged intent to deceive the public. *See Richards,* 662 F.2d at 69–72 (finding that statute of limitations began to run later for claim of intentional wrongdoing than for claim of wrongful discharge where defendants had concealed their wrongdoing); *Richardson v. U.S. News & World Report, Inc.,* 639 F.Supp. 595, 600 (D.D.C.1986) (finding that, for statute of limitations purposes, "the facts underlying plaintiffs' claims for intentional and fraudulent conduct are distinct from those supporting their claims premised upon lesser degrees of fault").[6]

4. Defendants understate the nature of Mrs. Smith's claim when they argue that it "boils down to the assertion that Defendants knew that cigarettes were 'addictive' but failed to tell the public this information," Defs.' Reply at 5, because her claim alleges that defendants acted deliberately and with the intent to deceive the public.

5. As defendants point out, at least two district courts have concluded that a plaintiff's awareness of the generally addictive and harmful qualities of cigarettes is sufficient to start the running of the statute of limitations on claims of fraudulent misrepresentation or concealment of information. *See Brown–Jones v. The Am. Tobacco Co.,* No. CV198-36, slip op. at 9–12 (attached as Ex. C, Defs.' Mot.); *Wakeland v. Brown & Williamson Tobacco Corp.,* 996 F.Supp. 1213, 1221–22 (S.D.Ala.1998). Nevertheless, these cases are of limited relevance to the Court's analysis because they apply statute of limitations law from jurisdictions other than D.C. Furthermore, the Court is, respectfully, unpersuaded by their reasoning. In *Wakeland,* the district court based its conclusion that the plaintiff had sufficient notice of the defendants' alleged fraud on the ground that the warnings on cigarette labels would "provoke inquiry in a person of ordinary prudence, ... which, if followed up, would lead to the discovery of fraud." 996 F.Supp. at 1222 (internal quotation omitted). Nevertheless, the *Wakeland* court did not explain how plaintiffs could have discovered the alleged fraud; and, here, defendants have not demonstrated how Mrs. Smith reasonably could have investigated the facts underlying her claim that defendants fraudulently concealed their knowledge of the harmful effects of smoking since the 1950s. *See infra.* In *Brown–Jones,* the district court calculated the limitations period from the time the plaintiffs knew or should have known that cigarettes were addictive. *Brown–Jones,* slip op. at 9. The Court, however, concludes that there must be greater evidence of a defendant's wrongdoing in order to start the limitations period on a claim of fraud under a theory of inquiry notice. *See infra* note 6.

6. The D.C. Court of Appeals has neither approved nor rejected drawing a distinction between the levels of knowledge sufficient to charge a plaintiff with inquiry notice of claims involving fraud and claims involving less culpable conduct. In *Morton v. National Med. Enters., Inc.,* 725 A.2d 462 (D.C.1999), it had an opportunity to decide the appropriateness of such a distinction but declined to do so because it found that the plaintiffs' fraud claims were "completely dependent upon and

Furthermore, while defendants argue that Mrs. Smith "had enough information to know she had a possible fraud cause of action," Defs.' Mot. at 7, they have not shown how, through the exercise of due diligence, Mrs. Smith could have investigated the facts of defendants' alleged fraud. *See Hawkins v. Greenfield*, 797 F.Supp. 30, 33 (D.D.C.1992) ("Defendants bear the burden of showing that plaintiff has not met the due diligence standard."). Defendants' omission is significant because, although the D.C. Court of Appeals recently stated that a plaintiff has a duty to investigate all matters affecting a possible cause of action "with reasonable diligence under all of the circumstances," it also acknowledged that, in some cases, "the relevant facts may be such that it may be reasonable to conduct no investigation at all." *Diamond*, 680 A.2d at 372, 381. In the absence of any indication as to how Mrs. Smith reasonably could have investigated the facts underlying her fraud claim in 1992, or greater evidence of defendants' alleged wrongdoing, the Court cannot state, as a matter of law, that Mrs. Smith was on inquiry notice of her fraud claim in 1992. Summary judgment on the ground that plaintiffs' claims are time-barred is therefore inappropriate.

B. *Reliance and Causation*

■ The Court does, however, conclude that summary judgment is warranted on Mrs. Smith's fraud claim because she has not shown that she relied on defendants' alleged nondisclosure, and on her deceptive trade practices claim because she has not shown how defendants' alleged conduct caused her injuries.[7]

■ As discussed, a plaintiff must establish that she relied on a defendant's conduct in order to make out a claim of fraud. *See Higgs*, 472 A.2d at 876. Here, Mrs. Smith's own deposition testimony leaves no doubt that she did not rely on defendants' nondisclosure of information in making decisions with respect to cigarette smoking. First, she testified that, apart from cigarette advertisements, she never had any contact or communication, either written or verbal, with any of the defendants. *See* Defs.' Mot., Ex. A, at 15–17. Second, she testified that she did not start to smoke, or continue to smoke, because of cigarette advertisements. *Id.* at 19. Indeed, she acknowledged that she "did not pay cigarette advertisements any mind." *Id.* at 17. Finally, Mrs. Smith accepted responsibility for her injuries, testifying that "I wanted to sue myself for what [smoking] has caused me. . . . For the pain I'm going through." *Id.* at 148.

■ In the face of this strong evidence that Mrs. Smith did not rely on defendants' alleged nondisclosure of information, plaintiffs offer an affidavit by Mrs. Smith stating that she did in fact rely on cigarette advertisements which promoted smoking. *See* Pls.' Opp'n, Ex. 1, ¶ 4. Nevertheless, it is axiomatic that a party cannot file a self-serving affidavit that conflicts with her prior deposition testimony in order to defeat a motion for summary judgment. *See, e.g., Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C.Cir.1991) (citing cases); *Reetz v.*

intertwined with their medical malpractice claims," and that the plaintiffs had sufficient notice of the defendant's fraudulent conduct. 725 A.2d at 469–71. In the absence of a ruling from the D.C. Court of Appeals, the Court is compelled to draw this distinction because, as discussed, the running of a given limitations period is tied to the particular cause of action asserted. Furthermore, because fraud claims must be pleaded with particularity, *see* Fed.R.Civ.P. 9(b), and must be proven by clear and convincing evidence, *see Ehlen v. Lewis*, 984 F.Supp. 5, 9 (D.D.C.

1997); *Bennett*, 377 A.2d at 59, it is entirely appropriate to require some evidence of wrongdoing, beyond that necessary for a claim involving less culpable conduct, in order to charge a plaintiff with inquiry notice of a fraud claim.

7. Because the parties disagree over whether reliance is a necessary element of a deceptive trade practices claim, the Court analyzes Mrs. Smith's claims separately.

*Jackson,* 176 F.R.D. 412, 414 (D.D.C.1997). Thus, the Court disregards Mrs. Smith's affidavit. *See Reetz,* 176 F.R.D. at 414. Plaintiffs also argue that the portions of Mrs. Smith's deposition testimony cited above do not establish lack of reliance because Mrs. Smith would not have started smoking "had the advertisements she saw advised her that smoking contained an addictive drug and could cause cancer." Pls.' Opp'n at 8–9. Nevertheless, the record is bereft of any support for plaintiffs' argument, save for a self-serving statement in Mrs. Smith's affidavit, *see* Pls. Opp'n, Ex. 1, ¶ 5, upon which the Court may not rely. Further, plaintiffs' emphasis on the asserted fact that Mrs. Smith would have relied on the cigarette ads if they had contained certain information, in effect, amounts to a renunciation of the reliance requirement in the context of fraudulent nondisclosure; the Court, however, will not relieve Mrs. Smith of her obligation to establish reliance as an element of fraud simply because her claim alleges nondisclosure, as opposed to misrepresentation, of information. In sum, because the record overwhelmingly indicates that Mrs. Smith did not rely, in any respect, on defendants' alleged nondisclosure of information, the Court grants defendants' summary judgment motion with respect to her fraud claim.

■ Summary judgment is also warranted on Mrs. Smith's claim for deceptive trade practices, which alleges that defendants' acts of withholding and concealing information that their cigarettes were addictive, and cause cancer and emphysema,

violated §§ 28–3904(e) and (f) of the D.C.Code.[8] The parties disagree over whether a plaintiff must prove that she relied on a defendant's conduct in order to succeed on a deceptive trade practices claim.[9] Nevertheless, the Court finds it unnecessary to resolve whether reliance is a required element of a deceptive trade practices claim because the section pursuant to which Mrs. Smith brings her claim still requires her to prove that defendants' alleged conduct caused her injuries, which she cannot do: § 28–3905(k)(1) authorizes a suit to be brought by "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a trade practice in violation of the law of the District of Columbia...." *See also Osbourne v. Capital City Mortgage Corp.,* 667 A.2d 1321 1330 (D.C.1995) (noting that "if the [plaintiffs] can prove that [the defendant] made a material misrepresentation and that they suffered damages as a result, they may seek relief under § 28–3904(e)"). Admittedly, the concepts of reliance and causation will often be intertwined. *See Zekman v. Direct Am. Marketers, Inc.,* 286 Ill.App.3d 462, 221 Ill.Dec. 570, 675 N.E.2d 994, 998 (1st Dist.1997), *rev'd on other grounds,* 182 Ill.2d 359, 231 Ill.Dec. 80, 695 N.E.2d 853 (1998) (noting, under similar consumer protection statute, that "the theory of reliance is ambiguously present within the parameters of the concept of proximate cause"). Nevertheless, reliance is not the exclusive means of proving causation. *See, e.g., Trifiro v. New York Life Ins. Co.,* 845 F.2d 30, 33 n. 1 (1st Cir.1988) ("Although there are some causal chains, which exist apart from any reli-

8. Sections 28–3904(e) and (f) state: "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to: ... (e) misrepresent as to a material fact which has a tendency to mislead; [or] (f) fail to state a material fact if such failure tends to mislead."

9. Case law reflects this lack of agreement. The district court's statement in *Witherspoon v. Philip Morris Inc.,* 964 F.Supp. 455, 464 (D.D.C.1997), that "[e]xcept for the element of intent, the deceptive trade practices claim

should track the fraud by nondisclosure claim," suggests that reliance is a required element. The Court cited this statement in its earlier Memorandum Order. *Smith,* 3 F.Supp.2d at 1477 n. 5. Nevertheless, in *Brown v. Brown & Williamson Tobacco Corp.,* Civ. Action No. 97–7229, slip op. at 10–13 (attached as Ex. A to Defs.' Oct. 15, 1999, Mot. To Submit Supp. Mem.), the Superior Court of D.C. concluded that reliance is not an essential element of a claim for deceptive trade practices under §§ 28–3904(e) and (f).

ance, there are other causal chains in which reliance forms an essential link."); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 745 (1995) ("while the statute does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual ... harm."). Thus, Mrs. Smith must show that defendants' allegedly deceptive trade practices caused her injuries, whether by virtue of her reliance on those practices or by virtue of some other reason. She has failed to do so. As discussed, Mrs. Smith's deposition testimony establishes that she did not rely on defendants' alleged nondisclosure in connection with her decisions to start and continue smoking. And, to the extent causation can be established independently of reliance in this context, the record does not reveal that defendants' alleged conduct caused her injuries. In the absence of a genuine issue of material fact as to whether defendants' alleged conduct caused Mrs. Smith's injuries, the Court concludes that defendants are entitled to judgment as a matter of law on her trade practices claim. Accordingly, defendants' motion is granted with respect to Count V.[10]

## C. *Loss of Consortium Claim*

Because the Court grants summary judgment in defendants' favor on Mrs. Smith's remaining claims, and because Mr. Smith's loss of consortium claim is derivative of Mrs. Smith's claims, *see Smith*, 3 F.Supp.2d at 1477 n. 5, the Court also grants summary judgment in defendants' favor on Count VI. *See Meek v. Shepard*, 484 A.2d 579, 582 n. 6 (D.C.1984).

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment with respect to the remaining counts (IV–VI) of plaintiffs' complaint. An appropriate Judgment accompanies this Opinion.

## *JUDGMENT*

For the reasons stated in the Court's accompanying Opinion, it hereby is

ORDERED, that judgment is entered in favor of defendants.

SO ORDERED.

**10.** Because the Court grants summary judgment on Mrs. Smith's claims on the grounds that she has not shown that she relied on defendants' alleged nondisclosure (Count IV), and that this nondisclosure caused her injuries (Count V), it need not consider defendants' alternative argument that her claims are preempted by federal law.