James R. CEVENINI, Richard Brenner,
and Bertell L. Nelson, Appellants,

v.

ARCHBISHOP OF WASHINGTON,
Appellee.

ARCHBISHOP OF WASHINGTON,
Appellant,

v.

Bertell L. NELSON, Appellee.

Nos. 95–CV–1013, 95–CV–1137,
95–CV–1448, 96–CV–391.

District of Columbia Court of Appeals.

Argued Oct. 3, 1996.
Decided Feb. 12, 1998.

Gregory L. Murphy, with whom David C. Schroeder and J. Chapman Petersen, Alexandria, VA, were on the briefs, for James Cevenini, Richard Brenner, and Bertell Nelson.

Kevin T. Baine, with whom Philip A. Sechler, Washington, DC, was on the briefs, for Archbishop of Washington.

Before TERRY, KING and REID, Associate Judges.

TERRY, Associate Judge:

We consolidated these four appeals because they present common questions of law involving the potential liability of the Roman Catholic Archdiocese of Washington for the misconduct of one of its priests, Rev. Thomas Schaefer. Appellants Cevenini, Brenner, and Nelson each filed suit in 1995[1] against the Archbishop of Washington,[2] seeking damages for the negligent hiring and supervision of Father Schaefer, fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress. The Archbishop filed separate motions to dismiss their complaints based on the statute of limitations and *forum non conveniens*. Judge von Kann dismissed Mr. Cevenini's complaint on statute of limitations grounds and denied as moot the *forum non conveniens* motion. With respect to Messrs. Brenner and Nelson, Judges Winfield and Alprin, respectively, denied the motions to dismiss based on the statute of limitations, but granted the motions to dismiss based on *forum non conveniens*. The three

1. Cevenini's complaint was filed on March 22, 1995; Nelson's and Brenner's were filed on April 5, 1995.

2. In 1948 the Congress of the United States chartered the Archbishop as a corporation sole, *i.e.,* a corporation "consisting of only one person whose successor becomes the corporation on his death or resignation...." BLACK'S LAW DICTIONARY 342 (6th ed.1990). *See* Act of May 29, 1948, ch. 355, 62 Stat. 1361. As such, the Archbishop—whoever he may be at a given moment—conducts the temporal affairs of the Archdiocese. Any suit against the Archdiocese is therefore brought against the Archbishop in his corporate capacity.

plaintiffs noted separate appeals, and—in Nelson's case only—the Archbishop noted a cross-appeal.

We hold that, as a matter of law, the statute of limitations expired before any of the three appellants filed suit. Accordingly, we affirm on that ground the dismissal of all three complaints, and thus do not reach the *forum non conveniens* issue as to any of the three appellants.

## I. Facts and Procedural History

The facts of these cases are virtually identical. While they were teenagers, the three appellants served as altar boys and volunteers at the Church of St. John the Evangelist ("St. John's") in Clinton, Maryland. The church operates under the immediate control of the Archdiocese, which includes 143 parishes in Maryland and the District of Columbia.

In 1975 the Archdiocese assigned Father Schaefer to serve as pastor at St. John's, where he remained for seven years. Each appellant alleged in his complaint that during those years Father Schaefer sexually abused him on various occasions at the church. In 1982 Father Schaefer was reassigned to another parish, and in 1986 the Archdiocese removed him from the parish ministry altogether and assigned him to work as a chaplain in a nursing home. He was later directed to cease all ministerial functions. In February 1995 the Washington Post published a series of articles disclosing that the Archdiocese knew of Father Schaefer's pedophilic tendencies long before he assumed his pastoral duties at St. John's. These disclosures were attributed to and confirmed by Monsignor William Lori, the Chancellor of the Archdiocese. Each appellant alleged that it was not until the publication of these articles that he had reason to suspect independent wrongdoing by the Archdiocese with respect to the hiring and supervision of Father Schaefer.

Cevenini stated that he was sexually abused by Father Schaefer on two occasions in 1976 and 1977, when he was thirteen years

old. His complaint alleged that, because of the trauma of the molestation, he repressed his memory of the abuse until 1991, when he began to recall what had happened. Nevertheless, he stated that he remained incapable of realizing the "impact" of Father Schaefer's abuse until 1993, when its effects were made clear to him through psychotherapy.

Brenner alleged that he was sexually abused by Father Schaefer on "many occasions" between 1981 and 1983, when he was thirteen or fourteen years old. Nelson alleged that he was sexually abused by Father Schaefer on "many occasions" between 1978 and 1982, when he was between thirteen and sixteen years old. Neither Brenner nor Nelson claimed to have suffered any memory loss or repression following the alleged incidents of abuse.

## II. The Accrual of Appellants' Claims

When a motion to dismiss based upon the statute of limitations relies on matters beyond the four corners of the pleadings, as in these cases,[3] it is treated as a motion for summary judgment. Super. Ct. Civ. R. 12(b); *see Knight v. Furlow,* 553 A.2d 1232, 1233 (D.C.1989). Such a motion may not be granted if there is a genuine issue as to any material fact. *See* Super. Ct. Civ. R. 56(c). To defeat a summary judgment motion, therefore, "the opposing party need only show that there is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979) (citation omitted), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980).

The applicable statute of limitations in these cases provides that an action must be brought within three years "from the time the right to maintain the action accrues." D.C.Code § 12–301(8) (1995). When the potential plaintiff is a minor at the time of accrual, he may bring the action within three years of his eighteenth birthday. D.C.Code § 12–302(a)(1) (1995). What constitutes the

**3.** Appended to each motion filed by the Archbishop was an affidavit from Monsignor Lori, the Chancellor of the Archdiocese.

accrual of a cause of action is a question of law; the actual date of accrual, however, is a question of fact. *Diamond v. Davis,* 680 A.2d 364, 370 (D.C.1996); *see also Bussineau v. President & Directors of Georgetown College,* 518 A.2d 423, 425 (D.C.1986); *Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1204 (D.C.1984). Thus we must ascertain whether there is a "genuine issue as to any material fact" concerning the date on which appellants' claims accrued; if not, and if the date of accrual was more than three years before they filed their respective complaints, then the Archbishop is "entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c).

■ The parties disagree as to the legal standard to be applied in determining the date of accrual of appellants' claims. Appellants argue that the so-called "discovery rule" is applicable to their claims and that the Archdiocese's fraudulent concealment of its wrongdoing delayed accrual until the publication of the Washington Post articles in 1995. The Archbishop contends that the discovery rule is inapplicable and that, in any event, appellants have not alleged facts that would support a tolling of the limitations period under the discovery rule. We need not resolve this dispute, because the outcome of these cases would be the same regardless of whether the discovery rule is or is not applicable. Under both the general rule of claim accrual and the discovery rule exception, the statute of limitations begins to run when a plaintiff either has actual knowledge of a cause of action or is charged with knowledge of that cause of action. *Diamond v. Davis, supra,* 680 A.2d at 372; *see also Burns v. Bell,* 409 A.2d 614, 615 (D.C.1979) ("where the fact of injury is readily discernible, the cause of action accrues when the injury occurs").

Our recent decision in *Diamond v. Davis* "use[d] the term 'notice' to refer to the quantum of knowledge required to commence the running of the statute of limitations in a particular case." 680 A.2d at 372. We then divided notice into two categories: actual notice and inquiry notice. " '[A]ctual notice' is that notice which a plaintiff actually possesses; 'inquiry notice' is that notice which a plaintiff would have possessed after due in-

vestigation." *Id.* (citation omitted). We made clear in *Diamond* that either actual notice or inquiry notice will be sufficient to start the clock running under the statute of limitations. Since there is no assertion here that any of these appellants had actual notice of a claim against the Archdiocese at any time prior to 1995, we must determine when they were placed on inquiry notice of their several claims.

Appellants contend that a plaintiff must have knowledge of each essential element of any cause of action in order to be charged with inquiry notice, and that fraudulent concealment by the defendant will toll the accrual of his claims. The Archbishop disagrees, arguing that the threshold level of knowledge required of a plaintiff is something less than the "each element" test suggested by appellants. We agree with the Archbishop.

■ In the District of Columbia, a plaintiff can be charged with inquiry notice of his claims even if he is not actually aware of each essential element of his cause of action. This court has repeatedly held that a claim accrues when the plaintiff knows of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing. *Diamond, supra,* 680 A.2d at 379–380; *Knight, supra,* 553 A.2d at 1236; *Bussineau, supra,* 518 A.2d at 425. Appellants' assertion of an "each element" or "all elements" test of accrual is without support in the case law:

> The fact that [the plaintiff] did not [initially] comprehend the full extent of *all* possible sequelae does not matter, for the law of limitations requires only that she have inquiry notice of the existence of a *cause of action* for personal injury.

*Baker v. A.H. Robins Co.,* 613 F.Supp. 994, 996 (D.D.C.1985) (emphasis in original; citations omitted), cited with approval in *Colbert v. Georgetown University,* 641 A.2d 469, 473 (D.C.1994) (en banc).

■ For the reasons that follow, we hold that appellant Cevenini was on inquiry notice of his claims against Father Schaefer no later than 1991, and that appellants Nelson and Brenner were similarly charged with inquiry notice in 1983, when they turned

eighteen.[4] We further hold that appellants' claims against the Archdiocese accrued simultaneously with their claims against Father Schaefer. Since none of these appellants filed suit until 1995, their actions are time-barred.

Cevenini's complaint alleges that he suffered from at least partial memory repression of his abuse at the time it occurred, and we must assume that to be the case for purposes of our review. *Colbert, supra,* 641 A.2d at 472. What is not disputed, however, but is in fact acknowledged in the complaint, is that Cevenini began to recover memories of "sexual molestation at the hands of Schaefer" as early as 1991, and that he knew at that time that Father Schaefer had been assigned to St. John's parish by the Archdiocese.

Cevenini suggests that because he remained unaware of the "impact" of Father Schaefer's abuse until 1993 at the earliest, he cannot be charged with inquiry notice until then. Our case law does not support his argument. We have held in many cases that inquiry notice will be charged to a plaintiff when he is aware of an injury, its cause, and some evidence of wrongdoing. *E.g., Diamond, supra,* 680 A.2d at 380. But we have never held that accrual should be tolled until the plaintiff fully appreciates the "impact" of the harm directed at him, and we see no reason to impose such a requirement here.

The instant cases are not unlike the *Colbert* case, a medical malpractice action in which we charged the plaintiff with inquiry notice of her claims as soon as she was aware of the fact that her doctor had misdiagnosed and mistreated her breast cancer. We held that at the time Mrs. Colbert became aware of the misdiagnosis, she had suffered "appreciable and actual harm" sufficient to place her on inquiry notice of her claims, even though the metastasis of her cancer did not occur until four years later. *Colbert, supra,* 641 A.2d at 473. We therefore affirmed a summary judgment in favor of the physicians and the hospital responsible for the misdiagnosis.

Cevenini was aware of his injuries no later than 1991. The fact that he may not have been aware then of their full "impact" is analogous to Mrs. Colbert's initial lack of metastasis. Just as we declined in *Colbert* to toll the statute of limitations until the plaintiff fully realized that her illness had been misdiagnosed, we similarly decline to toll the statute in Cevenini's case. Here, as in *Colbert,* the facts relevant to the issue of inquiry notice are set forth in Cevenini's complaint, which acknowledges (1) an awareness of injuries (both mental and physical), (2) their cause in fact (sexual abuse), and (3) some evidence of wrongdoing (knowledge that Father Schaefer was the abuser) as early as 1991. Although Cevenini may not have appreciated the full impact of Father Schaefer's misconduct until later, such an awareness exceeds the quantum of knowledge required to put a plaintiff on inquiry notice under *Colbert* and *Diamond.* Because Cevenini was aware of his injuries, their cause, and some evidence of wrongdoing in 1991, he is charged with inquiry notice of his claims against Father Schaefer as of that time.[5]

Nelson's and Brenner's cases are easier to resolve because neither of them makes any allegation of memory loss or memory repression. According to their respective complaints, when Nelson and Brenner turned eighteen in 1983, each of them was fully aware of his injuries (both mental and physical), their cause in fact (sexual abuse), and at least some evidence of wrongdoing (knowledge that Father Schaefer was the abuser).

---

4. Because appellants were all minors at the time of their abuse, the statute of limitations was tolled on their potential claims until they reached the age of eighteen, Cevenini in 1982 and Brenner and Nelson in 1983. D.C.Code § 12–302(a)(1).

5. Cevenini maintains that our decision in *Farris v. Compton,* 652 A.2d 49 (D.C.1994), affords him additional tolling protection because he repressed memories of his childhood abuse. In *Farris,* however, the plaintiffs had alleged total repression of any recollection of abuse, whereas Cevenini acknowledges that he began to remember what had happened as early as 1991. Furthermore, we held in *Farris* that even in cases of repressed memory, a claim accrues when the plaintiff knows, or reasonably should know, of "some injury, its cause, and wrongdoing." *Id.* at 59. That happened in 1991, at the latest, when Cevenini began to remember what Father Schaefer had done to him.

Like Cevenini, Nelson and Brenner acknowledged in their complaints that they knew Father Schaefer had been assigned to the parish by the Archdiocese. For the reasons already discussed with respect to Cevenini, it follows from *Diamond* and *Colbert* that by 1983 both Nelson and Brenner had the minimum quantum of knowledge necessary to be charged with inquiry notice of their claims against Father Schaefer. *Diamond, supra,* 680 A.2d at 379.

As appellants have noted, the critical event in these cases is not the accrual of their claims against Father Schaefer, but rather the accrual of their claims against the Archdiocese. Prior to *Diamond v. Davis,* we had not decided whether a plaintiff's knowledge of misconduct by one defendant placed that plaintiff on notice of claims against a potential co-defendant. In *Diamond,* however, we adopted the approach of the United States Court of Appeals for the District of Columbia Circuit[6] and declared:

> [T]he plaintiff's knowledge of wrongdoing on the part of one defendant did not cause accrual of his action against another, unknown defendant responsible for the same harm, *unless the two defendants were closely connected, such as in a superior-subordinate relationship.*

*Diamond, supra,* 680 A.2d at 380 (footnote omitted; emphasis added). We went on to hold:

> In some circumstances . . . the relationship of the defendants, together with other facts, may establish as a matter of law that a reasonable plaintiff with knowledge of the misconduct of one would have conducted an investigation as to the other. If that investigation would, as a matter of law, have revealed some evidence of wrongdoing on the part of the other defendant, then the cause of action will have accrued as to both.

*Id.* (footnote omitted). Thus *Diamond* makes clear that while knowledge of misconduct on the part of one defendant will not automatically create inquiry notice of claims

against a potential co-defendant, such notice may be charged to the plaintiff if (1) a reasonable plaintiff would have conducted an investigation as to the co-defendant, and (2) such an investigation would have revealed some evidence of wrongdoing.

■ According to their complaints, all three appellants were aware from the outset that it was the Archdiocese that had assigned Father Schaefer to St. John's and that Schaefer's role was that of a subordinate representative of the Archdiocese. It is also undisputed that the alleged acts of abuse occurred on church premises, while Father Schaefer was functioning as a representative of the Archdiocese. In these circumstances, we conclude that a reasonable plaintiff would have investigated his potential claims against the Archdiocese at the same time that his claims accrued against its representative. Because there is no evidence of fraudulent concealment by the Archdiocese,[7] a reasonably diligent investigation would have revealed at least some evidence of wrongdoing on the part of the Archdiocese (assuming *arguendo* that such wrongdoing had occurred). Consequently, we hold that appellants' claims against the Archdiocese accrued simultaneously with their claims against Father Schaefer.

### III. Fraudulent Concealment

■ When the party claiming the protection of the statute of limitations has employed "affirmative acts . . . to fraudulently conceal either the existence of a claim or facts forming the basis of a cause of action," such conduct will toll the running of the statute. *Estate of Chappelle v. Sanders,* 442 A.2d 157, 158 (D.C.1982) (citations omitted). Appellants' attempt to rely on this principle must fail for two reasons.

■ First, appellants have not alleged any action by the Archdiocese that, if it occurred, would constitute fraudulent concealment. It has consistently been the law in the District of Columbia that fraudulent concealment re-

---

6. *See Richards v. Mileski,* 213 U.S.App. D.C. 220, 224–225, 662 F.2d 65, 69–70 (1981); *Fitzgerald v. Seamans,* 180 U.S.App. D.C. 75, 84, 553 F.2d 220, 229 (1977).

7. See part III, *infra.*

quires "something of an affirmative nature designed to prevent discovery of [a] cause of action." *William J. Davis, Inc. v. Young,* 412 A.2d 1187, 1191–1192 (D.C.1980) (citation omitted); *see Chappelle, supra,* 442 A.2d at 158. Rather than alleging affirmative acts of concealment by the Archdiocese, appellants have asserted only that the Archdiocese failed to disclose information to them, and that the Archdiocese's policy of transferring Father Schaefer from one parish to another had the effect of concealing prior allegations of sexual abuse. Such assertions, even if true, do not constitute the "affirmative acts" contemplated in *Chappelle.*

Had appellants requested information about Father Schaefer's background from the Archdiocese and been refused access to it, our decision might be different. However, we are unwilling to hold that a failure to disclose information that has not even been requested constitutes fraudulent concealment. The mere fact of transferring Father Schaefer from one parish to another could not have had the effect of concealing appellants' causes of action against Schaefer (and hence against the Archdiocese), nor is there anything in the record to suggest that the Archdiocese misrepresented Father Schaefer's background to appellants. Furthermore, even if the Archdiocese had attempted to conceal its identity as a potentially liable party, we held in *Chappelle* that as long as the plaintiff possessed information which would have enabled her to file a timely claim, "concealment of the identity of liable parties, unlike the concealment of the existence of a claim, is insufficient to toll the statute of limitations." *Chappelle, supra,* 442 A.2d at 159. Without even an allegation of misrepresentation intended to conceal the existence of a possible cause of action, there can be no finding of fraudulent concealment.

■ Second, even assuming *arguendo* that the Archdiocese engaged in acts of fraudulent concealment, it is a "well established defense to a claim of fraudulent concealment ... that the plaintiff knew, or by the exercise of due diligence could have known, that he may have had a cause of action." *Westinghouse Electric Corp. v. City of Burlington,* 122 U.S.App. D.C. 65, 67, 351 F.2d 762, 764

(1965); *see Diamond, supra,* 680 A.2d at 375–376; *Chappelle, supra,* 442 A.2d at 158. An act of fraudulent concealment by a defendant does not relieve a plaintiff of his independent duty to pursue his cause of action diligently. On the contrary, the case law makes clear that a claim of fraudulent concealment is available only to a plaintiff who has exercised due diligence in the pursuit of his cause. *See Diamond, supra,* 680 A.2d at 375 (citing cases); *Doolin v. Environmental Power, Ltd.,* 360 A.2d 493, 497 (D.C.1976).

■ Even though Nelson and Brenner were legally aware of their abuse at the hands of Father Schaefer as early as 1983, when each of them reached the age of eighteen, their complaints show that they did not attempt to investigate any potential claims against the Archdiocese until 1995. Because due diligence is a prerequisite to claiming the protection of the fraudulent concealment exception to the statute of limitations, it is not available to plaintiffs like Nelson or Brenner, who undertook no investigation whatever for almost twelve years after they first realized that they might have a cause of action.

■ Cevenini's situation is a little different, but not materially so. He alleged in his complaint that in 1992 he "talked to priests and nuns in the Archdiocese" about his memories and that no one informed him of the Archdiocese's culpability. He suggests that this inquiry was sufficient to constitute due diligence. We hold, to the contrary, that Cevenini's efforts fell far short of due diligence. Merely talking to priests and nuns, of whom there are many hundreds in the Archdiocese, can hardly be deemed a sufficient effort to ascertain the potential liability of the Archdiocese for Father Schaefer's actions. Priests and nuns have little or no authority to speak on behalf of the Archdiocese, and surely would not have been in a position either to confirm or to deny Cevenini's allegations. Due diligence would have required Cevenini to seek out an Archdiocesan official (not just a priest or a nun) who could confirm or deny his charges, respond to his questions, and speak with authority on behalf of the Archdiocese. There is nothing in his complaint to indicate that he made any effort to seek out such an official. His fail-

ure to do so is exactly what we warned against in *Colbert:* he had information about a defendant's tortious conduct, knew that he had been significantly injured, but nevertheless deferred filing suit and waited to "see whether additional injuries [might] come to light." *Colbert, supra,* 641 A.2d at 473. Cevenini's assertion of fraudulent concealment, like Nelson's and Brenner's, must fail for lack of due diligence.

### IV. CONCLUSION

Nelson, Brenner, and Cevenini each filed claims against the Archdiocese in 1995. Because those claims accrued as a matter of law no later than 1983, 1983, and 1991, respectively, and because appellants have failed to allege or prove any act of fraudulent concealment by the Archdiocese, we hold that their claims are barred by the statute of limitations. The judgment to that effect in the *Cevenini* case must be affirmed.

Our review of the record shows that there is no real difference between Brenner's case and Nelson's. Their complaints were filed on the same day, and the allegations against the Archdiocese set forth in their complaints are stated in virtually identical language,[8] with only a few minor variations. Even the orders granting summary judgment, although issued by two different judges, contain very similar language and reasoning. We conclude that, for the purposes of appellate review, the *Brenner* and *Nelson* cases are identical in all material respects.

In the *Brenner* and *Nelson* cases the trial court based its ruling on the doctrine of *forum non conveniens,* having rejected the Archbishop's statute of limitations argument. This court, however, has held "on numerous occasions [that it] may affirm a decision for reasons other than those given by the trial court." *Garrett v. Washington Air Compressor Co.,* 466 A.2d 462, 464 n. 5 (D.C.1983) (citations omitted). The Supreme Court also has long recognized the "settled" rule that if the decision of a trial court is correct, "it must be affirmed," even though the trial court "relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937) (citations omitted). Following this well established rule, we affirm the judgments in both Brenner's case and Nelson's case, not on the ground relied upon by the trial court (*forum non conveniens*), but on the alternative ground that their claims, like those of Cevenini, are barred by the statute of limitations.

Accordingly:

(1) In the *Cevenini* case, the judgment is affirmed.

(2) In the *Brenner* case, the judgment is affirmed.

(3) In the *Nelson* case, the judgment is affirmed. The Archbishop's cross-appeal is dismissed as moot.

*It is so ordered.*

---

8. The only significant difference between the two complaints is that Brenner's complaint also includes two counts against Father Schaefer, unlike Nelson's, which does not name Schaefer as a defendant.