Regina Ann **LEWIS**, et al., Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

No. Civ.A. 00–1705(LFO).

United States District Court,
District of Columbia.

Nov. 28, 2001.

Richard T. Brown, Washington, DC, for plaintiffs.

Diane Marie Sullivan, Thomas M. Ray, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

This is a medical malpractice claim brought under the Federal Tort Claims Act by a mother and her son, alleging that negligent treatment by staff at Walter Reed Army Medical Center ("Walter Reed") during childbirth led to the son's brain damage and quadriplegia. Plaintiff Regina Ann Lewis was a sergeant in the United States Army when her son, Clayton Jamal Lewis, was born on October 14, 1993. The mother seeks compensatory and punitive damages on behalf of her son; she also seeks damages for herself based on the lifetime cost of caring for Clayton as well as loss of his services and companionship.

The government raises two arguments in its motion to dismiss: (1) the child's claims fall outside the Federal Tort Claims Act's two-year statute of limitations; and (2) the plaintiffs' claims are barred by the *Feres* doctrine, which precludes government liability for injuries incident to active duty military service. Clayton's claims are barred by the statute of limitations and will be dismissed on that basis. However, his claims, if timely, would not be barred by the *Feres* doctrine. As such, his mother's claim for medical expenses and economic loss, which are premised on negligent medical treatment provided to the child, withstand this motion to dismiss.

On the morning of October 13, 1993, a prenatal check-up at Walter Reed indicated Regina Lewis was suffering symptoms of pre-eclampsia, a pregnancy-related condition that can cause harm to the mother and/or child if left untreated. Symptoms had also been evident at an earlier check-up on September 27, 1993. Following the appointment on October 13, Regina Lewis was admitted to Walter Reed at approximately 11:00 AM. At the time, she was in the 37th week of pregnancy. Rather than immediately performing an emergency cesarean section operation, medical staff at Walter Reed administered pitocin (to induce labor) and magnesium sulfate and Labetalal (to reduce the mother's blood pressure). This course of treatment continued for twenty-nine hours before Clayton was delivered by emergency cesarean section at approximately 3:41 PM on October 14, 1993. Plaintiffs allege that Clayton's condition was not properly monitored prior to delivery, and emergency measures were not taken when he showed signs of prenatal distress, including hypoxia (decreased oxygen to the fetus) and a variable heart rate. Within twenty-four hours of birth, Clayton suffered a massive hemorrhage in the right hemisphere of his brain, causing brain damage and quadriplegia.

## Statute of limitations

### 1. Regina Lewis

█ The Federal Tort Claims Act bars all claims against the federal government

if not brought within two years. "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after the claim accrues...." 28 U.S.C. § 2401(b). The plaintiffs did not file an administrative complaint until October 28, 1998, placing them clearly outside this limit. However, the Soldiers and Sailors Civil Relief Act, 50 App.U.S.C.A. § 525, which excludes the period of a plaintiff's active duty military service, tolled the statute of limitations for the mother's claims until her retirement from the military in March 1997, giving her until March 1999 to file a claim. This analysis has been accepted by several other courts in considering claims under the Federal Tort Claims Act. *See, e.g. Kerstetter v. U.S.*, 57 F.3d 362 (4th Cir.1995); *Miller v. U.S.*, 803 F.Supp. 1120 (E.D.Va. 1992). The government does not dispute that Regina Lewis may invoke the tolling provisions of the Soldiers and Sailors Civil Relief Act. She filed an administrative complaint in October 1998; accordingly, her claims are not barred by the statute of limitations. The second issue, whether her claims are barred by the *Feres* doctrine, is discussed below.

## 2. Clayton Lewis

The same two-year statute of limitations applies to claims brought on behalf of Clayton Lewis, although he is not entitled to the tolling provisions of the Soldiers and Sailors Civil Relief Act. The government argues the statute of limitations began to run for Clayton in October 1993, as his injuries were apparent almost immediately after birth. Plaintiffs do not dispute this, but claim the statute of limitation is tolled for Clayton's claims under doctrines of fraudulent concealment and continuous treatment at Walter Reed.

*Fraudulent Concealment*

A medical malpractice claim accrues under the Federal Tort Claims Act when a claimant first becomes aware of his or her of the injury and its cause. *See United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Regina Lewis was undoubtedly aware of her son's injury shortly after his birth, but she claims to have been unaware of the precise cause. The claim for fraudulent concealment is based on the failure of Walter Reed staff to inform her that their negligent actions, rather than pre-eclampsia, may have been the cause of Clayton's injury.

Under District of Columbia law, that doctrine requires "something of an affirmative nature designed to prevent discovery of a cause of action." *Cevenini v. Archbishop of Washington*, 707 A.2d 768, 773–774 (D.C.1998). Failure to disclose information does not rise to the level of fraudulent concealment. *Id.* at 774. More importantly, the representation allegedly made to Regina Lewis, even if erroneous, turns on a genuine question of medical causation rather than a desire to mislead the plaintiff.

Additionally, "[a]n act of fraudulent concealment by a defendant does not relieve a plaintiff of his independent duty to pursue his cause of action diligently. On the contrary, the case law makes clear that a claim of fraudulent concealment is available only to a plaintiff who has exercised due diligence in the pursuit of his cause." *Cevenini*, 707 A.2d at 774. Even if Walter Reed staff did fraudulently conceal the cause of Clayton's injury, plaintiffs' failure to exercise due diligence precludes equitable tolling of the statute of limitations. In this circuit, the statute of limitations for medical malpractice claims brought under the Federal Tort Claims Act begins to run "by the time a plaintiff

has discovered both his injury and its cause, even though he is unaware that the harm was negligently inflicted." *Sexton v. United States*, 832 F.2d 629, 632 (D.C.Cir. 1987) (internal citations and quotations omitted). Under this standard, the plaintiffs were aware of both Clayton's injury and at least its general cause. "Armed with these facts, they could have sought advice that would have enabled them to evaluate the government's acts and omissions. As they failed to present a claim within two years, their action is barred." 832 F.2d at 637. *See also Herrera–Diaz v. United States*, 845 F.2d 1534, 1536 (9th Cir.1988) (mother's cause of action under the Federal Tort Claims Act accrued when she had knowledge her son "suffered from cerebral palsy which was caused by a lack of oxygen to his brain.").

*Continuous Treatment*

■ The continuous treatment doctrine, although applicable to medical malpractice cases in the District of Columbia, *see Anderson v. George*, 717 A.2d 876, 877 (D.C.App.1998), does not salvage Clayton's claims from being time barred. The doctrine applies when an injury or the extent of an injury is not apparent, due to the treating physician's representations or reassurances. *See Burns v. Bell*, 409 A.2d 614, 616 (D.C.App.1979). The continuous treatment doctrine does not toll the statute of limitations in this case, as Clayton's injury and its severity were apparent almost immediately following his birth.

*Feres* **doctrine**

■ The *Feres* doctrine prevents military personnel or their dependents from bringing legal claims to recover for injuries, including those resulting from medical malpractice, that are incident to military service. *See Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *see also Lombard v. United States*, 690 F.2d 215, 223 (D.C.Cir.1982) ("It is well established that *Feres* bars recovery by family members where the cause of action is ancillary or derivative to the serviceman's action for his own injury received incident to military service.").

The government argues that *Feres* bars claims by a pregnant woman on active duty in the military, as well as her fetus, when medical treatment is directed toward the mother rather than the unborn child. Regina Lewis concedes that the *Feres* doctrine would prevent her from claiming damages for negligent medical treatment provided to herself. Plaintiffs claim, however, that the *Feres* doctrine does not apply to claims brought on Clayton's behalf for treatment received in utero, or Regina's claims for medical expenses and other economic harm incurred due to negligent treatment received by Clayton in utero.

Case law is divided on whether the *Feres* doctrine applies to bar claims brought by a child stemming from medical treatment provided to a pregnant member of the military. *Compare Scales v. United States*, 685 F.2d 970 (5th Cir.1982); *Irvin v. United States*, 845 F.2d 126 (6th Cir. 1988); *Atkinson v. United States*, 825 F.2d 202 (9th Cir.1987) (precluding recovery for in utero injury); *to Romero by Romero v. United States*, 954 F.2d 223 (4th Cir.1992); *Del Rio v. United States*, 833 F.2d 282 (11th Cir.1987) (permitting recovery for injury inflicted in utero).

■ Plaintiffs receive slightly stronger support from the case law than does the government. Of the cases cited by the government which denied claims, *Scales* involved injury to a child resulting from the administration of a rubella vaccine to the mother, a medical treatment that was clearly provided to the mother, for the mother's benefit. In *Irvin*, negligent medical treatment was alleged to have been

rendered to the mother and child, but the specific, unsuccessful allegations of negligence were for treatment provided exclusively to the mother. *See* 845 F.2d at 127. *Atkinson,* like this case, involved a mother with pre-eclampsia, but the specific allegation was that military doctors failed to properly diagnose and treat the mother's condition. Moreover, only the mother's claim for injury to herself were found to be barred by *Feres. See* 825 F.2d at 203, n. 1 ("Atkinson's claims for injuries to her child are not at issue here. The parties have reached a settlement on those claims.").

Of the cases cited by the Lewises in which a plaintiff prevailed, *Romero* provides the most extensive analysis in concluding that "claims brought by civilians and civilian dependents of service members who have directly sustained injuries from military personnel are not *Feres-*barred." 954 F.2d at 225. This is true, according to the *Romero* court, even when proper prenatal care would necessarily have involved the pregnant service member's body. *See id.*

The D.C. Circuit has applied the *Feres* rationales in a different factual context to determine whether dependents' claims were barred by the doctrine. In that case, *Lombard v. United States,* the court held that the children of a service member, who had suffered birth defects as a result of their father's exposure to radiation while on active duty, were barred from recovery by the *Feres* doctrine because their claim had its "genesis" in their father's exposure. 690 F.2d at 226. *Lombard* is not controlling, given the differing factual predicates.

The crucial issue in this case is whether the negligent medical treatment leading to Clayton's injury was provided to him or to his mother. Plaintiffs' amended complaint is consistent in its allegations: while both Regina and Clayton received medical care at Walter Reed, only Clayton's medical treatment was negligent.

**Conclusion**

Clayton's claims are barred by the statute of limitations. Further discovery and expert witness affidavits may ultimately show that Regina's timely claims are barred by the *Feres* doctrine, if the medical care resulting in Clayton's injuries was in fact tendered to her, for her benefit, but on a motion to dismiss, plaintiffs' allegations are taken as true and all reasonable inferences are drawn in their favor.[1]

*ORDER*

For the reasons set forth in the accompanying memorandum, the government's motion to dismiss is granted in part and denied in part. The claims brought on behalf of Clayton Lewis are time-barred by the Federal Tort Claims Act and must be dismissed. However, the claims brought by Regina Lewis for medical expenses and other economic harm she has incurred as a result of allegedly negligent medical treatment administered to her son, a civilian, are not barred by either the applicable statute of limitations or the *Feres* doctrine. Accordingly, it is this 26th day of November, 2001

ORDERED: that the government's motion to dismiss the claims of Clayton Jamal Lewis is GRANTED. The government's

---

1. In their opposition, plaintiffs invited the court to convert the motion to dismiss to a motion for summary judgment, an invitation reiterated at oral argument. The government, for its part, has offered to file plaintiffs' medical records as a supplement to the record. Summary judgment would be premature at this point. The parties will be given an opportunity to conduct discovery and fully brief the question before summary judgment is granted or denied on this critical issue.

motion to dismiss of claims of Regina Ann Lewis is DENIED.

Further administration of this case will be discussed at a status conference on *Monday, December 10, 2001* at *10:00 am in Courtroom No. 3.*