Kathryn CARSWELL, Personal Representative of the Estate of Alex Carswell, a Minor, Deceased, Plaintiff,

v.

CHILDRENS NATIONAL MEDICAL CENTER, et al., Defendants.

Civ. No. 99–2748 (RWR/JMF).

United States District Court, District of Columbia.

Sept. 17, 2002.

Dickson J. Young, Robert J. Cunningham, Jr., Whitestone, Brent, Young & Merril, P.C., Fairfax, VA, Kathryn Carswell, Alexandria, VA, for Plaintiff.

Adam White Smith, McCandlish & Lillard, P.C., Fairfax, VA, Wyneva Johnson, Leslie Ann Gerardo, Martyn Liles, P.L.L.C., Leslie Ann Gerardo, Martyn Liles PLLC, Washington, DC, for Defendants.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case is before me for all purposes including trial. Currently ripe and ready

for resolution is the United States' *Notice of Filing of Defendant United States of America's Corrected Motion to Dismiss* ("Defs Mot."). For the reasons indicated below, defendant's motion will be denied.

### The Allegations of the Complaint

On April 23, 1993, Alex Carswell ("Alex"), an infant, underwent elective surgery at Children's National Medical Center. Complaint ("Compl.") ¶ 1. Alex died the next day. Compl. ¶ 8. Following Alex's death, an autopsy was performed by Dr. Roma Chandra, who concluded that Alex's death may have been caused by a genetic disorder. Compl. ¶ 10. Drs. A. Barry Belman and John Belot, who performed the surgery on Alex, told Alex's mother, Kathryn Carswell ("plaintiff"), that a genetic condition known as "fatty acid oxidation disorder" caused Alex's death. Compl. ¶ 11. However, on April 18, 1996, plaintiff learned that the genetic makeup of her and Alex's father made it "virtually impossible" for Alex to have died from this disorder. Compl. ¶ 12. On April 23, 1996, plaintiff, in her capacity as personal representative of the estate of her deceased son, brought suit in D.C. Superior Court against Children's National Medical Center, Dr. Berlot, Dr. Belman, and Dr. "John Doe." The case was removed to this court with the United States being substituted for Dr. Belot as a defendant. It was then dismissed without prejudice as to the United States so that plaintiff could exhaust her administrative remedies.

On March 18, 1998, plaintiff filed a claim with Navy Legal Service in Norfolk, Virginia but the Navy Legal Service dismissed the claim on April 26, 1999. Plaintiff again filed suit in this court on October 18, 1999.

### Defendant's Motion

Defendant United States moves to dismiss on the grounds that plaintiff did not file her administrative tort claim within two years of its accruing and for plaintiff's failure to comply with one of the late Judge Richey's orders.

### The Motion Will Be Denied

The Federal Tort Claims Act provides:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date ... of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C.A. § 2401(b)(1994).

■ Defendant may prevail only by establishing from the face of the complaint that this statute of limitations bars the action. *Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C.Cir.1985). Under the FTCA, a claim for negligence accrues "at the time the plaintiff discovers both his injury and its cause." *Gabriel v. Corrections Corporation of America*, 211 F.Supp.2d 132, 136 (D.D.C.2002).

Plaintiff claims that she did not learn until April 18, 1996 that the original explanation given for Alex's death might not in fact be accurate:

On April 18, 1996, and after diligent investigation and testing, Kathryn Carswell learned, for the first time, that Belman's opinions, representations, and statements that Alex Carswell died from fatty acid oxidation disorder were not true ... [and that] given the genetic make-up of Kathryn Carswell and Edwin Moloy, Alex's father, it was virtually impossible that Alex Carswell died from this genetic disorder.

Compl. ¶ 12.

Thus, according to the plaintiff, since her cause of action accrued on April 18, 1996, and she filed her administrative claim on March 18, 1998, less than two

years later, she was within the statutory period mandated by the FTCA.

Defendant, however, maintains that plaintiff's cause of action accrued on the date Alex died or at most on the day she was first given an explanation as to why he died-a date shortly after the autopsy had been performed.

In the seminal case, United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Supreme Court held that a cause of action under the FTCA accrues when the plaintiff is aware of both the existence and the cause of his injury. The Court specifically rejected the theory that a cause of action accrues only when the plaintiff learns that his injury is legally actionable as malpractice:

> There is nothing in the language or the legislative history of the Act that provides a substantial basis for the Court of Appeals' construction of the accrual language of § 2401(b). Nor did the prevailing case law at the time the Act was passed lend support for the notion that tort claims in general or malpractice claims in particular do not accrue until a plaintiff learns that his injury was negligently inflicted.

United States v. Kubrick, 444 U.S. at 119, 100 S.Ct. 352.

In Kubrick, the plaintiff was told in January of 1969 that the hearing loss he suffered following an operation to treat an infected femur was probably caused by the use of a particular antibiotic following his surgery. In that case, the plaintiff both knew that he was injured and knew, or had reason to believe, that the hospital was responsible for the injury. Plaintiff, therefore, should have brought suit within two years, or by January of 1971. Since he failed to do so, the Supreme Court found that his claim was time-barred.

In Lewis v. United States, 173 F.Supp.2d 52 (D.D.C.2001), another case of alleged medical malpractice, a mother and son brought an FTCA medical malpractice action, claiming that the hospital was negligent during the son's birth and that this negligence resulted in the child's brain damage and quadriplegia. Citing Kubrick, the court first noted that the mother was aware of her son's injury shortly after his birth. The court then noted that "[i]n this circuit, the statute of limitations for medical malpractice claims brought under the Federal Tort Claims Act begins to run" "by the time a plaintiff has discovered both his injury and its cause, even though he is unaware that the harm was negligently inflicted." Id. at 55–56 (citations omitted). Based on the fact that the mother knew before her son was born that she suffered from pre-eclampsia, "a pregnancy-related condition that can cause harm to the mother and/or child if left untreated," id. at 54, the court in Lewis found that "the plaintiffs were aware of both Clayton's [the son's] injury and at least its general cause." Id. at 56. See also Mac'Avoy v. The Smithsonian Institution, 757 F.Supp. 60 (D.D.C.1991)(holding that the plaintiff's cause of action for replevin under the FTCA accrued when plaintiff first learned that the museum claimed ownership of the disputed artwork).

█ In these cases, the plaintiffs knew that they had been injured and the cause sufficiently to allege, in a manner that would satisfy Fed.R.Civ.P. 11, that the defendant's negligence caused the injury. Plaintiff was not in the same position as these plaintiffs for she alleges that all she knew in 1993 that her son died and that she was provided with an explanation of his death that had nothing to do with anyone's negligence. At that time, therefore, plaintiff did not believe and had no reason to believe that the defendant was

responsible for Alex's death. In other words, that she had been injured in fact was known to her but that the hospital was responsible for the injury was not yet known to her. Thus, unlike the facts in either *Kubrick* or *Lewis,* when the plaintiff was originally told that Alex died due to a genetic disorder, she had no reason to look for another explanation for his death. In addition, she couldn't have brought suit at that point because the cause of Alex's death was believed to be due to genetic rather than external factors.

However, the plaintiff pursued genetic testing of herself and Alex's father. According to the allegations of the complaint, plaintiff discovered that there might be an external cause of his death and that the hospital was potentially the source or cause of Alex's injury when the plaintiff learned that it was unlikely that Alex died from a genetic disorder. Thus, when plaintiff learned that the proffered cause of her son's death was not accurate, she also learned or is held to have learned that she had an actionable claim. To allow plaintiff to pursue her claim is thus consistent with the Court's holding in *Kubrick* and its progeny.

It is important to bear in mind that at this point we are only dealing with the allegations of the complaint. Whether or not plaintiff used the requisite due diligence in the period of time between the explanation given her by the hospital and the discovery that the hospital's explanation could not be correct is a genuine issue of material fact that cannot be resolved on this record. It can be said, however, that commencing the running of the statute of limitations from April 18, 1996, the date that plaintiff learned that the proffered

cause of Alex's death was untrue, is certainly consistent with *Kubrick.* Hence, plaintiff had until April 18, 1998 to file an administrative complaint. Plaintiff's claim with Navy Legal Service was filed on March 18, 1998, and thus plaintiff was within the two year filing period mandated by the FTCA. Dismissal of this complaint on this record is, therefore, inappropriate.[1]

### Judge Richey's Order

■ This case was originally assigned to the late Charles R. Richey who was well known for the alacrity with which he moved his calendar. In this case, when he dismissed the case for failure to exhaust administrative remedies, Judge Richey ordered plaintiff to notify the court orally if she wished to "re-open" it within ten days of the conclusion of the administrative process. He gave her the phone number of his deputy courtroom clerk and directed plaintiff to call her to re-open the case. If she did not within the ten day deadline, he ordered that the complaint be dismissed. But, as *amicus curiae* points out, a tort claimant is granted 60 days, not 10, within which to file suit, once the administrative tort claim has been dismissed. 28 U.S.C.A. § 2401(b)(1994). Furthermore, as *amicus curiae* also points out, by the time the Navy had rejected the tort claim, Judge Richey has passed away, his deputy courtroom clerk had retired, and the phone number given plaintiff was no longer working. To dismiss this case for failure to comply with Judge Richey's order would certainly be a most remarkable abuse of discretion.

An Order accompanies this Memorandum Opinion.

---

1. The United States also argues that the plaintiff fails to qualify for the tolling provision provided in the FTCA, 28 U.S.C. A. § 2679(d)(5)(A)(B) (1994). However, having determined that plaintiff's claim was timely filed under section 2675(a), the court need not consider this additional statutory provision.

## ORDER

Pursuant to the accompanying Memorandum Opinion, it is hereby,

**ORDERED** that defendant United States' *Notice of Filing of Defendant United States of America's Corrected Motion to Dismiss* [# 36] is **DENIED.**

**SO ORDERED.**