Edward D. BERKOW, Appellant/Cross–Appellee,

v.

LUCY WEBB HAYES NATIONAL TRAINING SCHOOL FOR DEACONESSES AND MISSIONARIES CONDUCTING SIBLEY MEMORIAL HOSPITAL, et al., Appellees/Cross–Appellant.

No. 02–CV–99, 02–CV–174.

District of Columbia Court of Appeals.

Argued Jan. 7, 2003.

Decided Feb. 5, 2004.

Thomas J. Mitchell, Washington, P.C. for appellant.

Gary W. Brown, Washington, with whom Eric J. Berghold was on the brief, for appellee Lucy Webb Hayes National Training School for Deaconesses and Missionaries Conducting Sibley Memorial Hospital and appellee/cross-appellant, Margaret M. Shaffer, M.D.

Stephen L. Altman, Washington, with whom Andrew J. Spence was on separate briefs, for appellees Thomas A. Fleury, M.D., and R. Scott Klappenbach, M.D.

Susan T. Preston, Baltimore, MD, with whom Teri Kaufman Leonovich was on the brief, for appellees Gary P. Fisher, M.D., and Fisher & Kanovsky, P.C.

Before GLICKMAN and WASHINGTON, Associate Judges, and FERREN, Senior Judge.*

FERREN, Senior Judge:

In this medical malpractice suit for damages resulting from a cancer misdiagnosis, plaintiff Edward D. Berkow appeals the trial court's grant of summary judgment for the defendant-appellees, Lucy Webb Hayes National Training School for Deaconesses and Missionaries Conducting Sibley Memorial Hospital ("Sibley"), Margaret M. Shaffer, M.D., Thomas A. Fleury, M.D., R. Scott Klappenbach, M.D., Gary P. Fisher, M.D., and Fisher & Kanovsky, P.C. The trial court granted Sibley's and Dr. Fleury's motions after concluding that Berkow had failed to state a prima facie case. The court granted the motions of Drs. Shaffer, Klappenbach, and Fisher, and of Fisher & Kanovsky, P.C., on the ground that the amended complaint as to them was time barred, and that neither the discovery rule nor the continuing treat-ment rule served to toll the statute of limitations. We affirm.

## I.

Dr. Fleury, head of pathology at Sibley, diagnosed a pelvic mass in Berkow as a malignant, "high grade sarcoma" and treated him for that malady with chemotherapy at Sibley between February 15 and April 18, 1995, and thereafter on an outpatient basis. In December 1995, Berkow collapsed of congestive heart failure but recovered. In May 1996, he was informed that his ongoing chemotherapy had been ineffective and that his tumor was inoperable. After seeking a second opinion at Johns Hopkins Hospital in Baltimore, Berkow learned that his tumor was a B-cell lymphoma, not a sarcoma, whereupon he underwent radiation treatments that were completed successfully in October 1996. He thus claimed in the lawsuit here that the negligence of Dr. Fleury and Sibley in misdiagnosing and improperly treating his cancer caused an unnecessary year of pain and suffering, heart failure, and diminished quality of life resulting in damages measured by the costs incurred for the illness, loss of ability to work and earn a living, and a debilitated, restricted lifestyle.

Later, in amending his complaint, Berkow claimed that Drs. Klappenbach and Shaffer, too, had been at fault because, as pathologists at Sibley, they reviewed the slides of the specimen used for Berkow's biopsy and concurred in Dr. Fleury's misdiagnosis. Berkow also claimed that Dr. Fisher, a cardiologist, had been negligent in a way that contributed to his injury. After examining Berkow at Sibley in 1994

* Associate Judge Ruiz, who was on the panel that heard oral argument, subsequently recused from consideration of this case. Senior Judge Ferren was drawn to replace Judge Ruiz.

for complaints of swelling in his left leg (and other discomforts), Dr. Fisher found Deep Venous Thrombosis in Berkow's left leg and had not been able to find the usual, femoral pulse there. These signals, according to Berkow, should have alerted Dr. Fisher to the existence of a physical condition, such as a cancerous growth, that was impeding proper blood circulation to his pelvic region—a diagnostic failure that allowed Berkow's malignancy to grow substantially, for six months, before it was discovered (albeit inaccurately) by Dr. Fleury.

This case became a procedural nightmare. Sometimes before pro se plaintiff Berkow retained counsel, and at other times thereafter, the trial court issued rulings, among others, that dismissed then reinstated certain claims (against Sibley and Dr. Fleury), set aside a default judgment (against Dr. Fleury), vacated then reinstated summary judgment (for Drs. Fleury and Fisher), and granted leave to file an amended complaint adding defendants (Drs. Klappenbach, Shaffer, and Fisher, as well as Dr. Frederick Barr and two professional corporations, Fisher & Kanovsky, P.C. and Schwartz, Barr, Burrell & Hendricks, M.D.'s, P.C.).[1] The court's actions reflect painstaking care that Berkow receive fair consideration of his claims, but in the end his own defaults in light of clear rules of law and procedure gave the trial court—and now this court— no alternative to ruling in favor of all defendants.

## II.

### A. Dr. Fleury and Sibley

■ In evaluating Dr. Fleury's and Sibley's motions for summary judgment, the trial court concluded that without expert testimony, Berkow would not be able to establish the requisite standard of care imputable to these defendants. *See Allen v. Hill,* 626 A.2d 875, 877 (D.C.1993). Berkow had failed to proffer qualified experts and their expected testimony in response to defense requests pursuant to Super. Ct. Civ. R. 26(b)(4), despite court-extended deadlines for doing so. The trial court accordingly granted judgment for Dr. Fleury and Sibley as a matter of law and denied Berkow's subsequent motions to vacate under Super. Ct. Civ. R. 59(e) and 60(b).

■ Berkow argues that but for the misdiagnosis attributable to Dr. Fleury and Sibley, he would not have received ineffective, indeed damaging chemotherapy for over a year. Perhaps. But that allegation alone, even in a verified complaint, is insufficient to show—or even to raise a genuine issue of material fact leaving room for a finding—that Dr. Fleury's diagnosis, while incorrect, amounted to a deviation from the applicable standard of care. *See Meek v. Shepard,* 484 A.2d 579, 581 (D.C.1984). Doctors may disagree from time to time on a diagnosis or course of treatment. Accordingly, in most cases alleging medical malpractice, testimony of a qualified expert will be required to establish the applicable standard of care. *Dada v. Children's Nat'l Med. Ctr.,* 715 A.2d 904, 908 (D.C.1998); *Allen,* 626 A.2d at 877. "Only when a lay person, relying on common knowledge and experience, can find that the harm would not have occurred in the absence of negligence may the standard be established without the

---

1. By order dated August 22, 2002, this court ruled that Berkow had abandoned his appeal as to Dr. Barr and his professional corporation, Schwartz, Barr, Burrell & Hendricks, P.C., and thus we summarily affirmed the judgment in their favor. *See Keene v. United States,* 661 A.2d 1073 n. 1 (D.C.1995). Accordingly, these defendant-appellees are no longer before the court.

aid of an expert." *Meek*, 484 A.2d at 581 n. 4. That is not the case here. When the question is one of distinguishing the subtleties between lymphoma and sarcoma from a set of biopsy samples, "common knowledge and experience" will not equip one to discern whether a doctor failed to use the required care; the fact-finder must be informed by expert testimony.

Despite extended deadlines, Berkow never filed a statement naming an expert or experts who satisfied the requirements of Rule 26(b)(4), and the trial court accordingly entered summary judgment for Dr. Fleury on August 29, 2001 (filed September 4, 2001). Earlier, on February 22, 2001, Berkow had submitted a statement under that rule naming four expert physicians, three of whom eventually turned him down. The other proffered expert, Dr. M. Hossein Tirgan, apparently was willing to testify, but Berkow never explained how Dr. Tirgan, as a physician board-certified in internal medicine and oncology, would have been qualified as an expert in Dr. Fleury's field of pathology. Berkow argues, nonetheless, that under *Abbey v. Jackson*, 483 A.2d 330 (D.C.1984), he was entitled to rely on cross-examination of Dr. Fleury and other defense witnesses to establish the standard of care, without proffering his own experts. He never notified the defendants that he intended to do so, however, and, in any event, there is no record basis (such as Dr. Fleury's deposition testimony or defense admissions) for believing that Berkow could have used defense witnesses to establish the standard of care and defendants' departure from it. Accordingly, after reviewing the trial court's ruling de novo, *see Diamond v. Davis*, 680 A.2d 364, 381 (D.C.1996) (opinion of Ruiz, J.), we agree with the trial court that Dr. Fleury and Sibley were entitled to summary judgment based on Berkow's failure, for lack of expert testimony, to establish a prima facie case.

Later, in his motion of September 17, 2001 to vacate summary judgment for Dr. Fleury, Berkow noted that he had retained several other doctors, including a pathologist, Dr. John J. Shane, who would testify that Dr. Fleury's services fell below the applicable standard of care. But, because Berkow had never completed the proffer by moving to amend his Rule 26(b)(4) statement to include Dr. Shane (or anyone else) before summary judgment was entered, and because the trial court had bent over backwards to extend filing deadlines under that rule with which Berkow never fully complied, we find no abuse of discretion in the trial court's denial of Berkow's motions for reconsideration under Rules 59(e) and 60(b). *See District No. 1 v. Travelers Cas. & Sur. Co.*, 782 A.2d 269, 278 (D.C.2001).

## B. Drs. Fisher, Klappenbach, and Shaffer

As to the defendant-appellees added by the amended complaint, we agree again with the trial court: summary judgment must be entered in favor of Drs. Fisher, Klappenbach, and Shaffer (and the professional corporation Fisher & Kanovsky, P.C.) because Berkow's claims against each is time-barred.

D.C.Code § 12–301(8) (2001) establishes a three-year statute of limitations for medical malpractice actions. *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (en banc). The trial court deemed these claims filed as of the date Berkow filed his motion to amend the complaint, January 16, 2001, a ruling that Berkow does not dispute. There also is no dispute that on August 28, 1996, Dr. Fleury confirmed—and Berkow learned—that Dr. Fleury had misdiagnosed the cancer. The question, then, is whether Berkow's aware-

ness of his injury no later than August 28, 1996, began the three-year limitation period for filing suit not only against Dr. Fleury and Sibley—whom Berkow sued within the statutory period on July 14, 1999—but also against the defendants newly named in the amended complaint filed more than four years after Berkow learned of the misdiagnosis.

■ We have held that "a claim accrues when the plaintiff knows of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing." *Cevenini v. Archbishop of Washington*, 707 A.2d 768, 771 (D.C. 1998). Plaintiff's knowledge for this purpose includes not only "actual notice" but also "inquiry notice." *Diamond*, 680 A.2d at 372 (opinion of Ruiz, J.). And one "is deemed to be on inquiry notice" if, in meeting one's responsibility "to act reasonably under the circumstances in investigating matters affecting [one's] affairs, such an investigation, if conducted, would have led to actual notice." *Id.*

Berkow contends that Drs. Klappenbach and Shaffer, Sibley pathologists who concurred in Dr. Fleury's misdiagnosis, were legally responsible as well for that misdiagnosis. And Berkow maintains that Dr. Fisher, a cardiologist, and his professional corporation, Fisher & Kanovsky, P.C. were negligent in failing to discern in 1994 that Berkow's lack of femoral pulse indicated a growth, likely cancerous, that was impeding the blood flow to his pelvis—a diagnostic failure that substantially contributed to the expansion of his malignancy.

■ Whatever the merits of these arguments, they cannot obscure the fact that on this record Berkow, after learning on August 28, 1996, about Dr. Fleury's misdiagnosis, was on inquiry notice of any wrongdoing by the other defendants here who may have contributed to his injury. That surely would include all doctors, such as Drs. Klappenbach and Shaffer, who allegedly consorted with Dr. Fleury in his misdiagnosis. *Cevenini*, 707 A.2d at 773; *Diamond*, 680 A.2d at 380. Next, as to any other physician at Sibley, such as Dr. Fisher, who had not participated in Dr. Fleury's diagnosis, we have said that a plaintiff's knowledge of one defendant's misconduct will "create inquiry notice of claims against a potential co-defendant ... if (1) a reasonable plaintiff would have conducted an investigation as to the co-defendant, and (2) such an investigation would have revealed some evidence of wrongdoing." *Cevenini*, 707 A.2d at 773. We agree with the trial court that, if Berkow had acted reasonably, he would have investigated Dr. Fisher's role, if any, in failing to discover Berkow's cancer, and as a result would have discovered evidence, if any, of the doctor's wrongdoing. As the trial court elaborated:

> Once plaintiff was made aware in February 1995 that he had a cancerous tumor in his left groin area, he certainly knew that this was an area of his body about which he had complained repeatedly to Dr. Fisher of pain and swelling. He ought, then, to be held to have had an obligation to inquire whether Dr. Fisher ... should have discovered the cancer at all and sooner. Certainly had plaintiff consulted an expert, the opinion that he now has from Dr. Tirgan—that Dr. Fisher was negligent in failing to discover the tumor in 1994—would presumably have been given sooner.

■ Contrary to Berkow's contention, therefore, the "discovery rule"—which tolls the statute of limitations until a plaintiff has sufficient knowledge of the injury, its cause, and some evidence of wrongdoing—does not help him here. *See Hardi v. Mezzanotte*, 818 A.2d 974, 979 (D.C. 2003). The benefit of tolling under that rule ends, or perhaps more accurately is eclipsed, once a plaintiff is on inquiry no-

tice, as Berkow was here no later than August 28, 1996, as to all defendants. *See Cevenini*, 707 A.2d at 771.

■ Nor does the "continuing treatment rule" help Berkow. Under that rule, the limitation period for filing suit for claims arising from a doctor's treatment will be tolled "until the doctor ceases to treat the patient in the specific matter at hand." *Anderson v. George*, 717 A.2d 876, 878 (D.C.1998). Why so? It would be "ludicrous," we said, quoting a New York court, "to expect a patient to interrupt a course of treatment by suing the delinquent doctor." *Id.* (citation omitted). But, as we made plain, the period of tolling ends once the particular treatment "at hand" ends, since that treatment no longer would be jeopardized by an interfering lawsuit. In this case, the trial court found—and we see no basis in the record for disturbing that finding—that "Dr. Fisher did not continue to treat plaintiff for the missing pulse after December 1994," over six years before Berkow filed suit against him. It is true, however, as the trial court also found, that Dr. Fisher provided cardiac care to Berkow through December 2000. But even if we were to assume that, as part of that care, Dr. Fisher should be deemed to have been monitoring the femoral pulse after December 1994, there can be no doubt that once the malignant tumor was discovered in February 1995 by Dr. Fleury, Berkow was on inquiry notice of any role Dr. Fisher may have played in failing to detect that malignancy earlier. Furthermore, once Dr. Fleury took over treatment of that condition, there is no record evidence that Dr. Fisher's continuing treatment of Berkow's cardiac condition embraced continuing treatment germane to the malignancy. In sum, the continuing treatment rule did not toll the running of the statute of limitations to a point where there is any basis for concluding that Berkow's amended complaint of January 16, 2001 was filed within three years of the time his claim against Dr. Fisher (and his professional corporation, Fisher and Kanovsky, P.C.) accrued (February 1995 at the latest).[2]

Accordingly, the judgment in favor of all defendants is

*Affirmed.*

---

2. Berkow's contention that the trial court violated his "right to Notice and due process" when modifying the scheduling order at the hearing on June 30, 2000 has no merit whatsoever.